**[Cite as *In re C.H.*, 2021-Ohio-3992.]**

STATE OF OHIO        )               IN THE COURT OF APPEALS
                      )ss:          NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT   )

IN RE: C.H.

C.A. No.     29995

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 19 07 0616

DECISION AND JOURNAL ENTRY

Dated: November 10, 2021

CALLAHAN, Judge.

**{¶1}** Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her child in the permanent custody of Appellee, Summit County Children Services Board ("CSB" or "the agency"). This Court reverses and remands.

I.

**{¶2}** Mother and Father are the biological parents of C.H. (d.o.b. 9/13/16). They are also the parents of an infant born during the proceedings below, although that child is not involved in this appeal. Father has multiple other children, including B.H. (d.o.b. 4/11/09) and J.H. (d.o.b. 2/2/14) who are not subjects of this appeal but who were living in the same household with C.H. when the three children were removed by CSB. Their circumstances are intertwined with those of C.H., and their cases were consolidated with C.H.'s in the juvenile court.

{¶3}    Although the record is imprecise as to timing and circumstances, there is no dispute that C.H., B.H., and J.H. had been formally placed in the legal custody of their paternal grandmother ("Grandmother") prior to CSB's involvement in this case.  In June 2019, the agency received a referral regarding the well-being of the children in Grandmother's home, where Mother and Father had also been living.  When the agency caseworker visited the home to investigate, Mother and Father had moved out because Grandmother had obtained a protection order against them.  Grandmother could not provide the caseworker with the parents' new address(es).

{¶4}    Mother and Father had been using methamphetamine in the home and engaging in acts of domestic violence against Grandmother.  Father had multiple pending warrants for his arrest relating to drug charges in three cases.  The home was cluttered, the children were dirty, and Grandmother admitted to feeling overwhelmed by caring for three children with special needs.  She also admitted that she was using methamphetamine just to be able to get things done around the house.  Grandmother had failed to take C.H., who has Down Syndrome, to Summit DD, which discontinued the child's services for lack of participation.  Based on the conditions in the legal custodian's home, on July 23, 2019, CSB removed the children and filed complaints alleging that each was an abused (endangered), neglected, and dependent child.

{¶5}    Although the caseworker did not have a current address for Mother, she left a voicemail message on Mother's last known phone number regarding the shelter care hearing. When the caseworker was able to speak with Mother by phone in July 2019, after C.H. came into the agency's custody, she tried to schedule a home visit.   Mother, however, did not provide an address to the caseworker because she claimed to be "in between housing."

**{¶6}** The agency served Mother with the complaint and notice of the adjudicatory hearing by posting based on an affidavit averring that Mother's residence could not be ascertained with reasonable diligence. The affidavit recited the reasonable efforts used to determine Mother's residence, checking multiple data bases including the Statewide Automated Child Welfare Information System, Accurint, the Ohio Department of Corrections, Vinelink, the Summit County Criminal Justice Information System, Summit County Child Support Enforcement Agency, and the Bureau of Prisons. Only Accurint provided an address for Mother at a home on Ivanhoe in Kent, Ohio.

**{¶7}** Because that address referenced a time before Mother was known subsequently to be living with Grandmother, the caseworker attempted to verify the Ivanhoe address as Mother's current address. Mother was not at that home when the caseworker visited. When the caseworker spoke with Mother on August 5, 2019, Mother reported that she was living with "Aunt Shelly," but she did not provide an address or other information for Aunt Shelly. Mother disputed this and testified that she gave the caseworker her aunt's address in Akron.

**{¶8}** The caseworker was able to schedule two later dates in August 2019, to meet Mother at the Ivanhoe address for a home visit. Mother canceled both visits, and the caseworker was unable to verify that Mother was actually residing at the Ivanhoe address at that time. In fact, Mother testified on March 4, 2021, that she had not been living at the Ivanhoe address when the case began and that she had only been living there "[a] little over a year."

**{¶9}** CSB filed the original case plan in early August 2019, noting that Mother was homeless based on Mother's assertion that she was in between homes. The case plan goal was reunification with either Grandmother, as the child's legal custodian, or with the parents. Because the caseworker had been unable to meet with Mother to discuss the agency's concerns,

Mother's sole initial case plan objective was that she contact the caseworker if she desired to assume a parenting role and that she cooperate with the agency and engage in necessary services to address any identified issues. Mother did not participate in creating or signing the case plan.

{¶10} Mother and Father did not appear for adjudication. Grandmother stipulated to the allegations in the complaint, and the agency presented evidence to establish its claims in the parents' absence and lack of stipulation. The magistrate found that C.H. was an abused (endangered), neglected, and dependent child, and that CSB had used reasonable efforts to prevent the child's continued removal from his home.

{¶11} Mother and Father failed to appear at the dispositional hearing. Again, Grandmother waived her hearing rights, and the agency presented evidence in the parents' absence. The magistrate placed the child in the temporary custody of CSB, adopted the agency's case plan as an order, found that CSB had used reasonable efforts to prevent the child's continued removal from his home, granted Grandmother two-hour weekly supervised visitation, and ordered that Mother and Father should request an order of visitation from the court should they so desire.

{¶12} Neither parent attended the next three review hearings. Father had been incarcerated shortly after the dispositional hearing. At the review hearing in May 2020, Grandmother informed the court that Mother was living in Portage County and had recently given birth to an infant. At a later hearing, the caseworker testified that, after speaking with Mother during the first few weeks of the case, Mother did not contact her again until April 2020, when Mother was in active labor at the hospital. The caseworker testified that she told Mother to call her after she had returned home after giving birth so that they could schedule a home visit. Mother, however, did not contact the caseworker at that time. The caseworker later learned that

Grandmother had been in contact with Mother throughout the case but failed to notify the caseworker.

{¶13} Eleven months into the case, CSB filed a motion for a judicial determination of reasonable efforts to finalize a permanency plan and a motion for permanent custody regarding C.H., B.H., and J.H. As its first-prong ground, the agency alleged that the children could not be returned to their parents within a reasonable time or should not be returned based on the parents' failures to remedy the concerns underlying the children's removals and, alternatively, the parents' demonstrated lack of commitment towards the children. CSB alleged that it was not in the children's best interest to be placed in the legal custody of any parent or Grandmother.

{¶14} Approximately a month later, Father wrote a letter from prison to the juvenile court, asserting that he was aware of the upcoming sunset hearing, requesting counsel, and referring to Mother as a good co-parent. The juvenile court appointed counsel for Father. Mother appeared at the sunset hearing, the first hearing she had attended during the year-long case. The magistrate issued a decision finding the following:

> [The caseworker] had nominal contact with Mother at the beginning of the case. Mother has not participated in Court proceedings until today. Mother advised that she had not been to Court because no one would tell her the Court date. Mother did not contact the Court to obtain dates. Mother was sent all orders and decisions from prior hearings. The Court strongly urged Mother to appear at the Court an[d] apply for Counsel.

> [The caseworker] would like to meet with Mother and discuss what will be added on the case plan for her.

The magistrate also found that the agency had used reasonable efforts, including "attempted contact with Mother," to finalize a permanency plan.

{¶15} CSB filed an amended case plan, adding an objective for Mother, requiring that she obtain a drug and alcohol assessment, follow all recommendations, and submit to random

drug screens. The case plan indicated that Mother had worked with the agency to jointly develop the case plan objective and that Mother agreed to it.

{¶16} Mother filed a request for counsel, listing the Ivanhoe address as her residence. CSB instructed the clerk of court to serve Mother by certified mail at the Ivanhoe address with the motion and summons regarding the permanent custody hearing. The juvenile court appointed counsel to represent Mother.

{¶17} The permanent custody hearing began on November 19, 2020. Mother was present with her attorney. The mother of B.H. and J.H. appeared for the first time in the case and asserted that she wanted to participate in the proceedings and obtain appointed counsel. The juvenile court asserted that it would appoint an attorney for that mother. It then recessed the proceedings until March 3, 2021, to give counsel for the mother of B.H. and J.H. time to review the recording of that day's hearing and prepare for further proceedings.

{¶18} When the permanent custody hearing resumed on March 3, 2021, Mother's attorney orally moved for a six-month extension of temporary custody; or, alternatively, for legal custody. It was not clear whether she was seeking legal custody of only C.H., or of B.H. and J.H. as well.

{¶19} The hearing continued for a third day on March 4, 2021. Mother's attorney cross-examined the agency caseworker regarding the caseworker's contacts with Mother throughout the case, as well as the efforts the agency made to determine Mother's residence.

{¶20} CSB rested its case and Mother presented her case in chief. Mother testified and admitted that she had become aware of the case involving C.H. sometime in August 2019. She claimed, however, that the caseworker would not tell her about any upcoming hearing dates throughout the case because the agency was only concerned with reunifying the children with

Grandmother. Mother testified that she reached out to CSB "[m]ultiple, multiple, multiple times[,]" and "[a]t least a good 50 times to [the caseworker]." Mother claimed that on the rare occasions that the caseworker returned her calls, the caseworker asserted that she was under no obligation to do so because Mother was "not a priority."

{¶21} The permanent custody hearing concluded on April 22, 2021. Mother reopened her case to testify that the Portage County child welfare agency had closed its recent case and returned Mother's infant to her custody. She reiterated her desire for legal custody, but indicated that she would also support an award of legal custody of C.H. to the maternal grandmother of B.H. and J.H. After the guardian ad litem presented her report and the caseworker provided a final update since the prior hearing, Mother again testified in rebuttal. She disputed that she had failed to appear for a scheduled visitation. Instead, she testified that no one at CSB would allow her to enter the gate on the agency's premises despite her 20-30 calls to the caseworker and her supervisor. Mother testified that she also called Grandmother who was visiting the children at the time. Grandmother allegedly told Mother that she was not allowed to visit.

{¶22} At the conclusion of the permanent custody hearing, the juvenile court issued a judgment terminating Mother's and Father's parental rights and placing C.H. in the permanent custody of CSB. The juvenile court found that C.H. could not or should not be returned to either parent's custody based on their failures to remedy the conditions that gave rise to his removal, as well as their lack of commitment to the child. The trial court found that an award of permanent custody was in the best interest of C.H., while all other requested dispositions were not. The juvenile court further found that CSB had used reasonable efforts to prevent the child's continued removal from his home.

{¶23} Mother filed a timely notice of appeal. She raises three assignments of error for review. This Court consolidates some assignments of error to facilitate the discussion.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT GRANTED PERMANENT CUSTODY TO [CSB], TERMINATED MOTHER'S PARENTAL RIGHTS AND PLACED THE CHILD IN THE PERMANENT CUSTODY OF [CSB] WITH A FINDING [CSB] PROVIDED REASONABLE REUNIFICATION EFFORTS PURSUANT TO R.C. 2151.419.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO [CSB] AS MOTHER WAS NOT AFFORDED AN OPPORTUNITY TO BE INVOLVED IN THE CASE OF HER MINOR CHILD DUE TO [CSB'S] FAILURE TO INVESTIGATE, ACKNOWLEDGE AND PROVIDE NOTICE OF HEARINGS AND OTHER ISSUES RELATED TO THE DEPENDENCY ACTION AND PROCEEDINGS IN CONTRADICTION TO DUE PROCESS RIGHTS AFFORDED TO MOTHER UNDER THE UNITED STATES AND STATE OF OHIO CONSTITUTIONS.

{¶24} In her first two assignments of error, Mother challenges the service of summons of the complaint in this matter, arguing that any finding by the juvenile court that CSB had used reasonable efforts to facilitate the reunification of C.H. with Mother was "illusory and ineffectual" and, therefore, precluded an award of permanent custody to the agency. Mother further argues that the agency's failure to investigate and update its system and the juvenile court regarding Mother's residence violated her due process rights by depriving her of proper notice of proceedings and the opportunity to be heard in a case implicating her fundamental rights regarding her child.

{¶25} Parents have a fundamental liberty interest in the custody, care, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 65 (2000). A parent's right to raise his or her children is an essential one imbued with multiple constitutional protections including those

arising out of the Fourteenth Amendment Due Process Clause. *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, ¶ 9, quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). Before the juvenile court may permanently terminate parental rights, it must ensure that the parents have been "'afforded every procedural and substantive protection the law allows.'" *In re D.A.* at ¶ 10, quoting *In re Hayes*, 79 Ohio St.3d 46, 48 (1997).

{¶26} It is well established that "due process requires both notice and an opportunity to be heard." *In re Thompkins*, 115 Ohio St.3d 409, 2007-Ohio-5238, ¶ 13, citing, *e.g.*, *Hagar v. Reclamation Dist. No. 108*, 111 U.S. 701, 708 (1884), and *Caldwell v. Carthage*, 49 Ohio St. 334, 348 (1892). Specific to service of process,

> "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*In re Thompkins* at ¶ 13, quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). In the absence of notice of the proceedings, the juvenile court's jurisdiction does not attach. *In re Mullenax*, 108 Ohio App.3d 271, 274 (9th Dist.1996).

{¶27} For juvenile cases, Juv.R. 16(A) provides in relevant part that "summons shall be served as provided in Civil Rules 4(A), (C) and (D), 4.1, 4.2, 4.3, 4.5 and 4.6. * * * [W]hen the residence of a party is unknown and cannot be ascertained with reasonable diligence, service shall be made by publication." Civ.R. 4.4 addresses service of process by publication. Where a parent's residence is unknown, CSB may serve the complaint on the parent either by publication in a newspaper pursuant to Civ.R. 4.4(A)(1), or by publication "by posting *and* mail" pursuant to section (A)(2). (Emphasis added.) In either case, service of process by publication must be supported by an affidavit averring:

that service of summons cannot be made because the residence of the party to be served is unknown to the affiant, all of the efforts made on behalf of the party to ascertain the residence of the party to be served, and that the residence of the party to be served cannot be ascertained with reasonable diligence.

Civ.R. 4.4(A)(1). Where the serving party opts for publication by posting and mail, the affidavit "in addition, shall set forth the [ ] last known address [of the party to be served]." Civ.R. 4.4(A)(2). As a matter of public policy, some courts have recognized that "[t]he purpose of including such last known address is possibly [to] allow someone there, or in the area, who knows [the] whereabouts [of the party to be served], * * * to inform the [party] of the [action]. Consequently, such [party] would be able to enter an appearance and defend the action." *In re Wilson*, 21 Ohio App.3d 36, 39 (6th Dist.1984), quoting *Northland Dodge, Inc. v. Damachi*, 56 Ohio App.2d 262, 264 (10th Dist.1978).

{¶28} In this case, CSB attempted to serve Mother with the complaint by publication by posting and mail pursuant to Civ.R. 4.4(A)(2). The agency's affidavit averred that Mother's current residence was unknown and could not be ascertained with reasonable diligence. In addition, the affiant averred as to the agency's efforts to ascertain Mother's current residence. However, the affidavit did not set forth Mother's last known address. Although the clerk of court subsequently issued a notice of "Completion of Service by Posting and Certificate of Mailing," it stated only that "service by posting has been carried out." The notice did not state that the complaint was also mailed to Mother at her last known address.

{¶29} Mother argues that CSB was required to ensure that the complaint was also mailed to Mother at the Ivanhoe address discovered by the agency, based on Mother's assertion that that was her last known address. Mother's last known address, however, was Grandmother's address, where the intake caseworker knew Mother had been living immediately prior to the removal of the child from Grandmother's home. While Mother has misidentified

Mother's last known address, her underlying argument remains sound. To effectuate proper service of the complaint on Mother, CSB was required to note her last known address in its affidavit accompanying its instructions to the clerk of courts for service, so that service by publication could be completed by both posting and mailing as required by Civ.R. 4.4(A)(2). The agency failed to do so in this case, resulting in incomplete service of summons on Mother.

{¶30} Although Grandmother at one time had a protection order against Mother and Father based on domestic violence charges before the agency removed the child from her home, those circumstances did not preclude the mailing of the complaint to Mother at Grandmother's residence from being "reasonably calculated, under all the circumstances, to apprise" Mother of the proceedings. *See In re Thompkins* at ¶ 13. The caseworker testified that she developed a case plan objective requiring Grandmother to demonstrate that she could provide a safe environment for C.H. and his siblings, specifically based on the incidents of domestic violence by Mother and Father against Grandmother in her home. While discussing the concerns underlying the complaint with Grandmother to develop case plan objectives designed to facilitate reunification of the child with Grandmother, however, the caseworker learned that the protection order had been revoked and the domestic violence charges dropped when Grandmother failed to appear in court regarding them. The agency filed its original case plan containing that safety objective on the same day it filed instructions with the clerk of court, supported by its affidavit, to serve Mother by publication. Accordingly, the agency was already aware that the protection order was no longer in effect when it instructed the clerk to serve Mother pursuant to Civ.R.

4.4(A)(2). Under those circumstances, Mother might reasonably have received the complaint had it been mailed to Grandmother's residence, i.e., Mother's last known address.[1]

{¶31} CSB was obligated to comply with Civ.R. 4.4(A)(2) to effectively serve Mother with the complaint in the interest of due process. The agency failed to do so when it knew Mother's last known address yet failed to set forth that address in its affidavit. Mother's first and second assignments of error are sustained.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT REFUSED TO GRANT MOTHER AN EXTENSION OF TIME TO BECOME ENGAGED AND ACTIVELY INVOLVED IN THE CASE WITH HER MINOR CHILD PRIOR TO GRANTING PERMANENT CUSTODY TO [CSB].

{¶32} Mother argues that the juvenile court erred by failing to grant a six-month extension of temporary custody to allow Mother time to actively engage in case plan services. Based on this Court's resolution of Mother's first two assignments of error, her third assignment of error is rendered moot, and we decline to address it. *See* App.R. 12(A)(1)(c).

III.

{¶33} Mother's first and second assignments of error are sustained. This Court declines to address the third assignment of error. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

---

[1] Although not known by the caseworker until later in the case, Grandmother in fact had been having contact with Mother throughout the case. For example, on one occasion, the caseworker watched a virtual visit occurring in Grandmother's home, where Grandmother tried to hide Mother from the camera's view while Mother was also in Grandmother's home.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

LYNNE S. CALLAHAN
FOR THE COURT

CARR, P. J.
SUTTON, J.
CONCUR.


APPEARANCES:

DAVID M. LOWRY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.