[Cite as *In re J.S.*, 2022-Ohio-3465.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: J.S.

C.A. No.     30291

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 20 01 0062

DECISION AND JOURNAL ENTRY

Dated: September 30, 2022

CALLAHAN, Judge.

{¶1}     Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights and placed her child in the permanent custody of Summit County Children Services Board ("CSB" or "the agency"). This Court affirms.

I.

{¶2}     Mother and Father are the biological parents of J.S.,[1] born December 15, 2007. Mother is also the biological mother of four younger children who came into agency care at the same time and based on the same circumstances. Father is not the biological father of J.S.' siblings.

{¶3}     Father had no contact or involvement with J.S. for most of the child's life. Although Mother was the legal custodian of the five children, she had left them in the physical custody and care of her parents ("Grandmother" and "Grandfather;" collectively, "Grandparents")

---

[1] Although the juvenile court's judgment refers to the child as J.J.S., those initials include the child's nickname. This Court declines to reference the nickname and instead uses only the initials relevant to the child's legal name throughout this opinion.

and her brother ("Uncle") during the three years prior to CSB's involvement. Based on Grandparents' and Uncle's poor health and mobility issues, the deplorable and hazardous conditions in that home, and Mother's mental health issues, CSB removed the children and filed complaints alleging that they were abused, neglected, and dependent.[2] While Mother failed to appear for the shelter care hearing, Father appeared remotely by telephone because he resided outside Ohio. Father was also represented by counsel at the shelter care hearing. J.S. was placed in the emergency temporary custody of CSB.

{¶4} The agency directed the juvenile court clerk of courts to serve Mother and Father with the complaint. Mother does not dispute that she was properly served. The agency attempted to serve Father by posting and certificate of mailing, although it failed to note a last known address for Father in its affidavit for posting.

{¶5} At the adjudicatory hearing, the magistrate found that service of the complaint had been properly effected on Mother and Father. Mother appeared with counsel and stipulated to the child's dependency. CSB dismissed its allegations of abuse and neglect. The juvenile court adopted the magistrate's decision the same day. Although Father did not attend the adjudicatory hearing in person or through counsel, both the magistrate's decision and trial court's judgment were copied on Father and the attorney the court had earlier appointed to represent him. Father did not file objections to the magistrate's decision.

{¶6} After a dispositional hearing, J.S. was placed in the temporary custody of CSB. The juvenile court adopted the agency's proposed case plan. As the case progressed, Mother filed a motion for legal custody, or alternatively, a six-month extension of temporary custody.

---

[2] CSB had filed a prior case regarding J.S. shortly before the cases involving all five siblings. The child's original case was dismissed and refiled due to statutory time constraints.

Grandmother moved for legal custody and to intervene in the proceedings. CSB filed a motion for legal custody to a non-blood kinship caregiver. A few months later, however, the agency moved for permanent custody.

{¶7} The juvenile court held a hearing on all pending dispositional motions regarding J.S. and two of his siblings.[3] At the conclusion of the hearing, the juvenile court placed the siblings in the permanent custody of CSB but granted a six-month extension of temporary custody of J.S. to the agency.[4]

{¶8} Shortly thereafter, CSB filed a second motion for permanent custody of J.S. During the case, Grandmother and Uncle had died, and Grandfather was not able to care for the child himself. The agency alleged that Father had abandoned J.S., and that the child could not or should not be returned to Mother's care based on multiple R.C. 2151.414(E) grounds. Mother filed a motion for legal custody. The agency made multiple varied attempts to serve Father with notice of the permanent custody hearing. Unable to determine his current address, the agency ultimately served him by publication in an appropriate local newspaper.

{¶9} Mother filed a motion to dismiss the case due to lack of service of the complaint on Father. She argued that the juvenile court lacked jurisdiction over the case pursuant to this Court's decision in *In re C.H.*, 9th Dist. Summit No. 29995, 2021-Ohio-3992. The juvenile court ordered the parties to brief the issue.

{¶10} Shortly before the date scheduled for the permanent custody hearing, CSB filed a notice informing the trial court and parties that it had reached the paternal grandmother who was able to provide contact information for Father to the agency. The notice added that Father was

---

[3] The other two siblings were placed in the legal custody of relatives at another time.
[4] The refiling of J.S.' case provided a longer period of time to allow CSB to try to facilitate his reunification with family.

willing to virtually attend the permanent custody hearing, waive any defects in service, and relinquish his parental rights regarding J.S.

{¶11} At the permanent custody hearing, the juvenile court judge engaged in a lengthy and detailed colloquy with Father regarding his rights to effective notice of the complaint; to counsel, including appointed counsel if he is indigent; and to a full hearing on the permanent custody motion. Significantly, the judge explained that if Father wished to challenge the defective service of the agency's complaint on him that she would be required by law to dismiss the case. The judge explained that she would continue the hearing if Father wanted to confer with an attorney. In addition, the judge explained all of Father's hearing rights that he would be waiving, the significance of an award of permanent custody to CSB, and the breadth of the divestiture of all parental rights he would endure if he voluntarily surrendered those rights. Father asserted that he understood everything that the judge had explained to him, that he was not impaired by alcohol or drugs, that no one had threatened him or promised him anything in exchange for his waiver of rights, and that he wished to voluntarily relinquish all parental rights regarding J.S.

{¶12} The juvenile court addressed Mother's attorney regarding her pending motion to dismiss and asked how Mother was prejudiced by the lack of service of the complaint on Father. Mother's attorney replied that Mother suffered a prejudicial effect from ineffective service on Father because "[Father] may have elected to participate, and that may have affected this case." After hearing from the remaining parties and taking a recess to consider the matter, the juvenile court found that Mother was not prejudiced by the lack of service on Father and denied her motion to dismiss. It reasoned that Mother was involved in the case from the beginning and had the opportunity to work towards reunification with the child; and that Father was now present and well

aware of the nature and status of the proceedings, yet nevertheless wished to voluntarily surrender his parental rights.

{¶13} The juvenile court found that Father had made a knowing, voluntary, and intelligent waiver of all the rights explained to him. The judge accepted Father's waiver and surrender of his parental rights. The trial court then heard evidence in support of the pending dispositional motions. At the conclusion of the hearing, the juvenile court granted CSB's motion for permanent custody and terminated Mother's and Father's parental rights. Mother filed a timely appeal and raises three assignments of error for review. As the assignments of error are interrelated and premised on the same underlying alleged error, this Court consolidates them to facilitate review.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED PLAIN ERROR AND DEPRIVED APPELLANT MOTHER OF HER DUE PROCESS RIGHTS WHEN IT ADJUDICATED THIS CHILD AS ABUSED, NEGLECTED, AND DEPENDENT DESPITE THE LACK OF SERVICE ON FATHER WHICH FAILURE PRECLUDED THE COURT'S JURISDICTION FROM ATTACHING. [sic.]

### ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED PLAIN ERROR AND DEPRIVED APPELLANT MOTHER OF HER DUE PROCESS RIGHTS WHEN IT GRANTED PERMANENT CUSTODY DESPITE THERE BEING NEITHER A VALID UNDERLYING ADJUDICATION OF ABUSE, NEGLECT, OR DEPENDENCY NOR A PENDING COMPLAINT FOR PERMANENT CUSTODY. [sic.]

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO DETERMINE THE STATUS OF SERVICE OF PROCESS FOR BOTH OF THE ADJUDICATORY HEARINGS WHEN THE REQUIREMENTS OF LOC.R. 7.02(B)(8) PUT THE COURT ON NOTICE THAT SERVICE HAD NOT BEEN PERFECTED. [sic.]

{¶14}   Mother argues that the juvenile court erred by granting permanent custody of J.S. to CSB.  She premises her arguments in each assignment of error on the assertion that lack of effective service of the complaint on Father divested the juvenile court of jurisdiction to consider the agency's motion for permanent custody.  This Court disagrees.

{¶15}   Mother cites this Court's opinion in *In re C.H.*, 9th Dist. Summit No. 29995, 2021-Ohio-3992, wherein we reversed an award of permanent custody because CSB had failed to properly serve the appellant-parent with the complaint which alleged the child's dependency, neglect, and abuse.  We reasoned that incomplete service of the complaint on the appellant-parent deprived her of due process requiring reversal and remand to the juvenile court.  *Id.* at ¶ 31.  In this case, Mother is not arguing that CSB failed to properly serve her with the complaint.  Instead, she argues that the juvenile court lacked jurisdiction to adjudicate J.S. a dependent child and later consider the agency's motion for permanent custody because CSB had not effected proper service of the complaint on Father.  This Court has distinguished such a challenge and rejected it.

{¶16}   In *In re X.H.*, 9th Dist. Summit Nos. 30115 and 30116, 2022-Ohio-779, ¶ 9, we reaffirmed our prior holding in *In re A.M.*, 9th Dist. Summit No. 26141, 2012-Ohio-1024, ¶ 18, that "the appealing parent must demonstrate that she was actually prejudiced by the [lack of service on the other parent] before she may assert [the alleged error] on her own behalf; otherwise she lacks standing to raise the issue."  (Internal quotations omitted.)  We added that the appealing parent may not rely on mere speculation to demonstrate that she suffered actual prejudice.  *In re X.H.* at ¶ 9, quoting *In re A.M.* at ¶ 21.

{¶17}   In this case, Mother has failed to argue how the agency's failure to properly serve Father with the complaint prejudiced her.  Accordingly, she lacks standing to raise that issue on appeal.  Nevertheless, were we to construe Mother's arguments to imply some underlying

prejudicial effect on her, we must further conclude that those arguments are based on mere speculation. As in *In re X.H.*, the facts here demonstrate that Father had no meaningful relationship with J.S. prior to his removal from his grandparents' home. *See id.* at ¶ 10. "Moreover, it is difficult to understand how Father would have been successful in challenging CSB's allegation[ ] of dependency when Mother stipulated to th[at] allegation[ ] as true." *See id.* There is nothing in the record to indicate that Father's participation throughout the case below would have inured to Mother's benefit. Accordingly, she has not demonstrated how she was prejudiced by Father's lack of participation. In the absence of a showing of actual prejudice, Mother lacks standing to challenge CSB's failure to properly effect service of the complaint on Father.

{¶18} This Court takes this opportunity to clarify that CSB's failure to properly serve Father with the complaint deprived the juvenile court of personal jurisdiction over Father; lack of service did not impact the juvenile court's properly invoked subject matter jurisdiction. *In re A.M.* at ¶ 13, citing *In re M.M.*, 8th Dist. Cuyahoga No. 79947, 2002 WL 207610, *5 (Feb. 7, 2002). As such, Father could waive any defects and, thereby, acquiesce in the trial court's personal jurisdiction. *In re A.M.* at ¶ 13, citing *In re J.P.*, 9th Dist. Summit No. 23937, 2008-Ohio-2157, ¶ 7. Accordingly, had Father objected to CSB's improper service of the complaint on him, the juvenile court could have vacated the voidable adjudicatory judgment for lack of personal jurisdiction. Under those circumstances, the lack of a valid adjudication would have precluded the juvenile court from considering the agency's pending motion for permanent custody. However, because personal jurisdiction, unlike subject matter jurisdiction, may be waived, a judgment issued in the absence of properly invoked personal jurisdiction is merely voidable, not void ab initio.

{¶19} In this case, Father made an initial appearance in the case at the shelter care hearing. Thereafter, CSB failed to properly serve him with the complaint and summons regarding the

adjudicatory hearing. Ultimately, the agency was able to locate Father who appeared at the permanent custody hearing. At that time, the juvenile court judge clearly and thoroughly explained to Father that he could challenge the court's personal jurisdiction and that, given the lack of proper service, she would dismiss the case. Father, however, waived any defects in service on the record and indicated a consistent desire to voluntarily relinquish his parental rights regarding J.S. Given Father's waiver of personal jurisdiction, the juvenile court did not err by accepting Father's voluntary surrender of parental rights and by further considering the merits of CSB's motion for permanent custody.

{¶20} Finally, to the extent that Mother argues that the juvenile court's judgment must be reversed based on its disregard for its own local rules, this Court is not persuaded. Mother argues that the juvenile court failed to require the agency's compliance with Loc.R. 7.02(B)(8) of the Court of Common Pleas of Summit County, Juvenile Division, which states that a party must include "a description of the time and manner of service of process upon the appropriate parties" in its pretrial statement. Because CSB's timely-filed pretrial statement prior to the adjudicatory hearing indicated that service on the parents remained "pending at this time[,]" Mother argues that the juvenile court had notice at the hearing that service had not been perfected. Mother cites no authority, and this Court finds none, to support the argument that proof of service is demonstrated by a party's assertion in the party's pretrial statement.

{¶21} The juvenile court found that CSB had properly served Father with the summons and complaint based on the Completion of Service by Posting and Certificate of Mailing filed by its clerk of courts prior to the adjudicatory hearing. Even though this Court recognizes that Father was in fact not properly served under the facts of this case, we need not reverse the juvenile court's permanent custody judgment for the reasons discussed above. Mother lacks standing to challenge

the ineffective service of process on Father. Moreover, Father waived any defects in service. Mother's three assignments of error are overruled.

III.

{¶22} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, P. J.
CARR, J.

CONCUR.

APPEARANCES:

ALEXANDRA HULL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JUSTIN BARNHART, Attorney at Law, for Appellee.

NOWAR O. KATIRJI, Attorney at Law, for Appellee.

MYRA A. COTRILL, Guardian ad Litem.