[Cite as *In re J.R.*, 2024-Ohio-626.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## LOGAN COUNTY

IN RE:                                        CASE NO. 8-23-07

    J.R.,

DEPENDENT CHILD.
                                              O P I N I O N
[X.S. - APPELLANT]

IN RE:                                        CASE NO. 8-23-08

    J.S.,

DEPENDENT CHILD.
                                              O P I N I O N
[X.S. - APPELLANT]

**Appeals from Logan County Common Pleas Court
Family Court Division
Trial Court Nos. 20 CS 30 A, 20 CS 30 B**

**Judgments Affirmed**

**Date of Decision:  February 20, 2024**

**APPEARANCES:**

    *Alison Boggs* **for Appellant**

    *Evan R. Downing* **for Appellee**

**WILLAMOWSKI, P.J.**

{¶1} Appellant X.S. brings this appeal from the judgments of the Common Pleas Court of Logan County, Family Court Division granting permanent custody of J.R. and J.S. to Logan County Children's Services ("the Agency"). X.S. appeals from this judgment alleging that 1) the trial court lacked personal jurisdiction over X.S.; 2) the judgment terminating X.S.'s parental rights to J.S. is against the manifest weight of the evidence; 3) the Agency failed make reasonable efforts to reunify X.S. with the children; 4) the trial court erred by overruling his motion for legal custody of J.R.; 5) the trial court erred by staying the proceedings; and 6) X.S. was denied the effective assistance of counsel. For the reasons set forth below, the judgments are affirmed.

{¶2} X.S. is the biological father of J.S. (born in 2014). At the time of J.S.'s birth, the mother, A.R., had another child, J.R. (born in 2009) who lived with A.R. and X.S. On May 7, 2020, the Agency filed complaints alleging that J.S. and J.R. were dependent children. The complaint stated that the children were living with A.R. and X.S. in Bellefontaine, Ohio at that time. The complaint was filed after the Agency received reports about drug usage and violence in the home and allegations that J.S. and J.R. had not been fed for three days. The investigator spoke with A.R. and learned that both A.R. and X.S. were using drugs. A.R. also admitted to violent fights between the two of them. J.S. and J.R. were placed in the temporary custody

of the Agency. A guardian ad litem ("GAL") was appointed on May 13, 2020. A summons for the adjudicatory hearing was sent to X.S. at his last known address, however service was not completed.

{¶3} On June 1, 2020, the Agency filed a family case plan with a goal to reunite the children with A.R. and X.S. The case plan required X.S. to address his substance abuse issues, mental health issues, and domestic violence issues. The Agency required X.S. to complete a parenting class and counseling for his issues, though it was noted that the Agency did not know where X.S. had gone and believed he might be receiving inpatient treatment at that time. The trial court then appointed counsel for X.S.

{¶4} The adjudication hearing was held on June 1, 2020. Doc. 41. The trial court noted that although X.S. was not served with a summons and all the necessary parties were not present, the trial court had jurisdiction over the persona and subject matter of the case. The trial court then found that J.S. and J.R. were dependent children. A.R. stipulated to the presence of domestic violence between herself and X.S., to the use of illegal substances by herself and X.S. and to concerns in the home, which affected the health and safety of the children. Service was completed on X.S. on July 20, 2020.

{¶5} On July 13, 2020, the GAL filed a report that indicated that the GAL had made contact with X.S. when he contacted the GAL to provide a new address. X.S. told the GAL that he wished to have visitation with J.S., but could not seek

custody at that time due to his living situation. The GAL recommended that the children remain in the temporary custody of the Agency with visitation provided to A.R. and X.S. The disposition hearing was held on July 20, 2020. X.S. was present for the hearing and was represented by counsel. X.S "waived any defects in time, manner, and service" at the hearing. Doc. 61. The trial court continued the temporary custody of the children. The trial court noted in its judgment entry that the Agency had made reasonable efforts to prevent the removal of the children from the home.

{¶6} On October 6, 2020, the Agency filed an update to the case plan due to X.S.'s actions. The reason for the change was that X.S. was "actively working on his case plan goals since connecting with the Agency." Doc. 68. The Agency noted that X.S. was working on the services requested and was regularly visiting with J.S. The progress notes stated as follows:

> Records received from TCN report [X.S.] is going to counseling to address his mental health and AOD dependency. [X.S.] was at Columbus Springs in Dublin in early May 2020 for inpatient services. Since his release he is now connected with TCN for after care, ongoing treatment. Recommendations currently: individual mental health counseling, AOD counseling and a group session is not recommended. Case management is also recommended for [X.S.], ongoing medication management through TCN. The agency has a signed release of information to continue monitoring his progress.
>
> Since the face to face visits between [X.S. and J.S.] in August, [X.S.] is maintaining negative drug screens. He is positive for Suboxone which is part of his treatment program.

Doc. 70.

{¶7} On March 30, 2021, the Agency filed an annual review summary. The summary included the following update regarding X.S.'s progress.

> [X.S.] was initially engaged in services at TCN to address mental health, medication management and AOD needs. He was consistently visiting with [J.S.] either in person or virtually through summer and fall 2020. Recent records obtained from TCN since mid-October 2020, he is no longer engaged in services. [X.S.] was also No-Call No-Show for virtual visits through the agency with [J.S.] on 2/12/2021 and 2/19/2021 visitation after re-engaging in visits end of 2020. Visits are currently suspended per the visitation guidelines-notification was sent to [X.S.] on 2/22/21. We have not heard from [X.S.] since a follow email on 2/25/21 stating he needs to take a step back, focus on his mental health. [The caseworker] is unaware of any current mental health services for [X.S.] since discharge notice was given from TCN. There has been no response from [X.S.] to this worker so far in March 2021.

Doc. 83. The Agency subsequently determined that X.S. had made insufficient progress in the annual case plan review. X.S. then reconnected with the Agency on May 10, 2021, asking to restart services. X.S. indicated that he had been residing in a sober living house in Hamilton, Ohio.

{¶8} On September 30, 2021, A.R. passed away. The Agency then filed its motion for permanent custody J.R. and J.S. on October 8, 2021. The motion was based on the grounds that the children had been in the temporary custody for more than twelve months in a consecutive twenty-two month period. The GAL filed a report on October 11, 2021, which indicated that J.S. wanted to remain in the foster home, but still have visits with X.S. The GAL recommended that the trial court grant the Agency's motion for permanent custody. The Agency then reinstated

X.S.'s visitation with J.S. and added J.R. to the visits. X.S. gave the Agency some names of possible kinship placements which were reviewed. The Agency did not approve the placements due to the fact that the children and the potential placements had never met and thus had no bond.

{¶9} On April 13, 2022, paternal relatives filed a motion to intervene and a motion for legal custody of the children. The Agency filed a motion in opposition to the relatives' motion on April 18, 2022. X.S. filed his response supporting the motions to intervene. The GAL filed a response in opposition to the motion. The trial court denied the motion to intervene on May 2, 2022. The relatives appealed from this judgment, which caused a stay in the proceedings. This Court dismissed the appeal for want of prosecution on August 8, 2022, and the stay was lifted.

{¶10} On April 29, 2022, the Agency filed its semi-annual review. The review noted that since October of 2021, X.S. had been consistently visiting J.S., attending counseling service, generally providing clean drug screens, attending parenting classes, and following all recommendations from the classes. X.S. was employed and attempting to obtain independent housing. When X.S. was questioned about two positive drug tests, he commented that he "knows what is coming". Doc. 177 at 4. The Agency filed another semi-annual review on October 28, 2022. This review showed that X.S. had lost his visitation in May 2022 due to appearing at one while under the influence of drugs. Numerous drug screens since then had returned positive results for THC and Buprenorphine.

-6-

{¶11} On January 23, 2023, the GAL filed a report. The GAL noted that J.S. told him that J.S. wished to remain with the foster family and not live with X.S. The GAL recommended that since X.S. had not shown a consistent ability to meet the basic needs of J.S., it would be in the best interest of J.S. to grant the Agency's motion for permanent custody.

{¶12} On January 24, 2023, X.S. filed motions to have custody of J.S. returned to him and to obtain legal custody of J.R. A hearing on the permanent custody motion was started on May 4, 2022, and completed on January 30, 2023. X.S.'s motions for custody were also heard on January 30, 2023. Following the hearing, the trial court denied X.S.'s motions for custody of the children and granted the motion of the Agency for permanent custody. X.S. appeals from these judgments and raises the following assignments of error.[1]

### First Assignment of Error

**The trial court's determination that J.S. was a dependent child is void ab initio as the trial never had personal jurisdiction over [X.S.] prior to adjudication and therefore could not adjudicate J.S. dependent as to his rights as a parent.**

### Second Assignment of Error

**The trial court's decision granting permanent custody was against the manifest weight of the evidence and amounted to an abuse of discretion.**

### Third Assignment of Error

---

[1] The first, second, third, and fifth assignments of error only apply to J.S. The fourth assignment of error only applies to J.R. The sixth assignment of error applies to both children.

> **The Agency failed to use reasonable efforts to reunify [X.S.] with [J.S.]**

**Fourth Assignment of Error**

> **The trial court erred when it overruled [X.S.'s] motion [for] legal custody of [J.R.]**

**Fifth Assignment of Error**

> **The trial court erred when it stayed the permanent custody proceedings based on an ancillary appeal filed by non-parties to the case. Further the trial court erred when it failed to get the matter immediately back on the docket when the appeal was dismissed.**

**Sixth Assignment of Error**

> **[X.S.] did not receive effective assistance of counsel, in violation of his constitutional right to counsel.**

In the interest of clarity, the assignments of error will be addressed out of order

*Jurisdiction*

{¶13} X.S. claims in the first assignment of error that the trial court's determination that J.S. was a dependent child was void ab initio because he trial court did not have personal jurisdiction over X.S. prior to the adjudication. In this assignment of error, X.S. is not arguing that the trial court lacked subject matter jurisdiction, just that it lacked personal jurisdiction. "It is only when the trial court lacks subject matter jurisdiction that its judgment is void; lack of jurisdiction over the particular case merely renders the judgment voidable." *In re K.K.*, 170 Ohio St.3d 149, 2022-Ohio-3888, ¶ 48, 209 N.E.3d 660. The failure to properly serve a

father with a complaint of dependency does not deprive the juvenile court of its subject matter jurisdiction, merely its personal jurisdiction over the father. *In re J.S.*, 9th Dist. Summit No. 30291, 2022-Ohio-3465, ¶ 18. Personal jurisdiction, unlike subject matter jurisdiction, may be waived.

{¶14} A review of the record in this case shows that service of the complaint on X.S. failed. The judgment entry from the Adjudication Hearing indicates that X.S. was not present and had not been served. Doc. 41. However, X.S. was present for the Disposition Hearing and "waived any defects in time, manner, and service." Doc. 61. Had X.S. objected to the failure of the Agency to obtain service of the complaint on him, the juvenile court could have vacated the voidable adjudicatory judgment for lack of personal jurisdiction. *In re J.S., supra* at ¶ 18. He did not do so. Personal service may be obtained by voluntary appearance or waiver. *In re A.L.W.*, 11th Dist. Portage No. 2011-P-0050, 2012-Ohio-1458. "[A]n objection to personal jurisdiction is waived by a party's failure to assert a challenge to such jurisdiction at its first appearance in the case." *Id.* at ¶ 37. X.S. did not object to the personal jurisdiction at his appearance at the Disposition Hearing, thus he has waived it. The first assignment of error is overruled.

*Effect of Appeal by Third Parties*

{¶15} In the fifth assignment of error, X.S. claims that the trial court erred by granting a stay to the permanent custody proceedings when an appeal was filed by third parties from the denial of their motion to intervene. X.S. also claims that

the trial court erred by failing to immediately reinstate the permanent custody proceedings when the appeal was dismissed for want of prosecution. A review of the record shows that at no time did any party file anything with the court objecting to the stay in the proceedings that was granted. Likewise, no party filed anything with the court requesting that the proceedings be set for a hearing date once the appeal was dismissed. "A first principle of appellate jurisdiction is that a party ordinarily may not present an argument on appeal that it failed to raise below." *State v. Wintermeyer,* 158 Ohio St.3d 513, 2019-Ohio-5156, ¶ 10, 145 N.E.3d 278. Although X.S. raised these issues in his motion to have custody returned to him, which was filed less than a week before the permanent custody hearing, this was the first time the matter was brought to the attention of the court and was not timely. At the time, the point of the argument was not to object to the delay, but to argue that since the Agency did not push to have the hearing continued immediately, the trial court should dismiss the case as not being important. No party raised the issue when the trial court could have avoided the alleged error. Thus, X.S. cannot now claim that the delay was improper when he failed to object to it at the time of the delay. This would allow him to take advantage of an alleged error that he could have prevented. *Id.* Additionally, X.S. does not show how he was prejudiced from the alleged error. X.S. instead argues that the delay, which occurred without objection, was evidence that the Agency did not consider his case important, not that it caused

him prejudice. Since he shows no prejudice, any error that may have occurred would be harmless. For these reasons, the fifth assignment of error is overruled.

*Reasonable Efforts to Reunify*

**{¶16}** In the third assignment of error, X.S. argues that the Agency failed to make reasonable efforts to reunify X.S. with J.S. The Agency had the burden of showing that it made reasonable efforts to reunify X.S. with J.S. R.C. 2151.419. "Case plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated." *In re Evans*, 3d Dist. Allen No. 1–01–75, 2001–Ohio–2302, *3. "Agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan." *In re A.M.A.*, 3d Dist. Crawford No. 3-13-02, 2013-Ohio-3779, ¶ 29. However, this does not mean that there was nothing more that the Agency could have done, but rather that the Agency's case plan and efforts were reasonable and diligent under the circumstances of the case before the Agency. *Id*. The question of whether an Agency has made reasonable efforts towards reunification is reviewed under an abuse of discretion standard. *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 24. "An abuse of discretion means an unreasonable, arbitrary, or unconscionable action." *State ex rel. Cincinnati Enquirer v. Sage*, 142 Ohio St.3d 392, 2015-Ohio-974, ¶ 35, 31 N.E.3d 616. A trial court's decision will not be disturbed on appeal if the record "contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory

elements for a termination of parental rights have been established." *In re T.S.*, 2d Dist. Greene No. 2016-CA-26, 2017-Ohio-482, ¶ 6, 85 N.E.3d 225.

{¶17} A review of the record in this case shows that the trial court had repeatedly made findings that the Agency was making reasonable efforts to prevent removal from the home in the emergency hearing. No finding regarding the reasonable efforts to reunify was made at the adjudicatory hearing. Findings regarding the reasonable efforts to reunify were made after the disposition with the trial court finding that the Agency had referred the parents to the appropriate services. In the judgment entry regarding the termination of parental rights, the trial court made the following findings:

> [The Agency] assisted in re-connecting Father with services from local mental health provider TCN including drug screens. [The Agency] facilitated visitations. [X.S.] did not express concerns about the services identified nor [ask] for additional services. Furthermore, no challenges were made prior to the hearing alleging that reasonable efforts were not made. The Court FINDS that [the Agency] made reasonable efforts throughout the case to reunify the family.

Doc. 234 at 3.

{¶18} X.S. argues that the Agency did not make reasonable efforts to reunify him with J.S. because he was treated differently than A.R. The caseworker testified that the Agency made efforts to help X.S. reunify by providing referrals for mental health services, drug addiction services, parenting classes, and supervising visitation. Additionally, the Agency allowed X.S. to reengage with services after being absent for several months because he believed A.R. would be receiving

custody before her sudden death. A review of the record shows that X.S. was not treated the same as A.R. but that the differences were attributable to the involvement of each parent. The testimony of the caseworker, along with all of the semi-annual reviews, which were part of the record, provided competent, credible evidence supporting the trial courts findings of reasonable efforts by clear and convincing evidence. The third assignment of error is overruled.

*Manifest Weight of the Evidence*

{¶19} X.S. claims in the second assignment of error that the trial court's decision to grant the Agency's motion for permanent custody was against the manifest weight of the evidence. In his fourth assignment of error, X.S. similarly claims that the trial court erred by denying his motion for legal custody of J.R. Due to the similarity of these assignments of error, we will address them together. The right to parent one's own child is a basic and essential civil right. *In re Murray*, 52 Ohio St.3d 155, 556 N.E.2d 1169 (1990). "Parents have a 'fundamental liberty interest' in the care, custody, and management of their children." *In re Leveck*, 3d Dist. Nos. 5–02–52, 5–02–53, 5–02–54, 2003–Ohio–1269, ¶ 6. These rights may be terminated, however, under appropriate circumstances and when all due process safeguards have been followed. *Id.* When considering a motion to terminate parental rights, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. These requirements include, in pertinent part, as follows:

(B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

 * * *

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *.

* * *

For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to [R.C. 2151.28] or the date that is sixty days after the removal of the child from the home.

* * *

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * * the court shall consider all relevant factors, including, but not limited to, the following.

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies * * * for twelve or more months of a consecutive twenty-two month period * * *.

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414. "A court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which a court can determine by clear and convincing evidence that the essential statutory elements for a termination of parental rights have been established." *In re Da.R.*, 3d Dist. Shelby No. 17-18-13, 2019-Ohio-2270, ¶ 9. The standard of review for a determination of legal custody is an abuse of discretion standard. *In re C.S.*, 3d Dist. Paulding No. 11-21-07, 2022-Ohio-2451.

{¶20} The determination whether to grant a motion for permanent custody requires a two-step approach. *In re L.W.*, 3d Dist. Marion Nos. 9-16-55, 9-16-56, 2017-Ohio-4352. The first step is to determine whether any of the factors set forth in R.C. 2151.414(B)(1) apply. *Id.* If one of those circumstances applies, then the trial court must consider whether granting the motion is in the best interest of the child by considering the factors set forth in R.C. 2151.414(D). *Id.*

{¶21} Here, the motion for permanent custody was based on the claim that J.S. had been in the temporary custody of the Agency for more than 12 out of the prior 22 month period. The record shows that J.S. was removed from the home on

-15-

May 7, 2020, which means that 60 days from then would be July 6, 2020. She was adjudicated a dependent child on June 1, 2020. Since this date is the earlier of the two options, it is the statutory date that J.S. entered the temporary custody of the Agency. R.C. 2151.414(B)(1)(e). The Agency filed its motion for permanent custody of J.S. in October of 2021, approximately 16 months after J.S. entered the temporary custody of the Agency. Thus the factor under R.C. 2151.414(B)(1)(d) was met.

{¶22} Once one of the factors in R.C. 2152.414 (B)(1) is met, the next step is for the trial court to determine whether the termination of parental rights is in the best interest of the child. The trial court specifically made findings of fact regarding the statutory factors and those factors were supported by the record. When considering the interactions of the children as required by R.C. 2151.414(D)(1)(a), the trial court made the following findings. The trial court determined that J.R. and J.S. were half-siblings, that X.S. was J.S.'s father, and that X.S. had raised J.R. as his child as well, considering both children to be his. The trial court also noted that X.S. was "kind and listened to the children" and that they were bonded with each other. The trial court found that J.S. loved X.S. The trial court also found that J.S. and J.R. had a loving and caring bond with their foster family. These findings were supported by the testimony of the caseworker, the GAL, the foster mother, and by X.S. himself.

{¶23} R.C. 2151.414(D)(1)(b) requires the trial court to consider the wishes of the children. Although J.S. had originally indicated a desire to live with X.S., this changed after the May 13, 2022, visit when X.S. came under the influence of cocaine and scared the children. After that visit, J.S. indicated the desire to remain with the foster family. These findings were supported by the testimony of the GAL and the caseworker.

{¶24} R.C. 2151.414(D)(1)(c) addresses the custodial history of the children. As discussed above, the children were continuously in the care of the Agency from May 6, 2020. The last date of the hearing in this case was January 30, 2023. Thus, the children had been in the temporary custody of the Agency for over 2 ½ years at the time of the final hearing.

{¶25} R.C. 2151.414(D)(1)(d-e) address the children's needs for a legally secure placement and any other factors which might affect this. The trial court found that X.S. was an addict who was still trying to recover as well as a man dealing with significant mental health issues. The trial court noted that X.S. had been diagnosed with schizoaffective disorder, bipolar disorder, depression, anxiety, PTSD, severe alcohol abuse disorder. The testimony of X.S.'s counselor and the caseworker support this finding. The trial court went on to find the following:

> Father has secured housing but the environment is not safe. Father argues that the case plan does not specifically address the use of alcohol but only substances. Alcohol is a substance and Father's attempts to rationalize is concerning and is an extremely dangerous mindset for an addict. The record is clear that Father has a diagnosis

of severe alcohol abuse disorder and that he must stop using alcohol and drugs in order to be a safe and effective parent. Father downplays his on-going struggle with substance abuse and mental health. He has had the benefit of both out-patient and in-patient treatment but still abuses substances and struggles with his mental health. Father's significant other also doesn't appreciate the dangers of using alcohol even when an individual is in recovery. Father is still working through trauma he has experienced in his life. Father wants to work part-time in addition to receiving social security, which is commendable. Father's love for both minor children is clear but love alone cannot provide children with the safety and stability they deserve. * * *

* * *

* * * The [children] have spent two years of their lives in a safe environment without worries of domestic violence and substance abuse. [X.S.] does not appreciate the risk associated with using and/or abusing alcohol as an addict who remains in the throes of recovery. He is still dealing with the aftermath of his own childhood trauma which interferes with his ability to understand the trauma that the [children] are dealing with. Father's journey of recovery is a long and difficult one. Father appeared at a visitation under the influence which is strong evidence of his inability to understand how this negatively impacts the children. No child should ever have to deal with the prospect of losing another parent to addiction. He cannot parent without subjecting the [children] to on-going risks. He is not equipped to provide the safety, security, and permanency that [the children] need and deserve. He currently lacks the capacity to meet the needs of the [children] due to his on-going mental health and alcohol and drug issues. Father continues to relapse. Father minimizes the concerns of multiple police responses to his home resulting in arrest and charges related to domestic violence. Father was given additional time to work on his recovery. Sadly, he cannot recall or share why and how he made a suicide attempt. The concerns which led to the removal of the children from the home have not yet been alleviated. [The children] need a legally secure permanent placement which cannot be achieved without the granting of permanent custody to [the Agency].

Doc. 234 8-10. All of these findings were supported by the testimony of the caseworker, the GAL, X.S.'s counselor, and X.S.

{¶26} A review of the record indicates that the trial court fully considered the statutory factors when making a determination about the best interest of the children. The findings the trial court made were supported by the testimony of the various witnesses as well as the exhibits. Credible evidence was presented to support, by clear and convincing evidence, the trial court's decision to terminate X.S.'s parental rights regarding J.S. Similarly, the evidence supports the judgment of the trial court to deny X.S.'s motion for legal custody of J.R. The second and fourth assignments of error are overruled.

*Ineffective Assistance of Counsel*

{¶27} In the sixth assignment of error, X.S. argues that he was denied the effective assistance of counsel.

> In evaluating whether a petitioner has been denied effective assistance of counsel, this court has held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." *State v. Hester* (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph four of the syllabus. When making that determination, a two-step process is usually employed. "First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *State v. Lytle* (1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 498, 358 N.E.2d 623, 627, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.

> On the issue of counsel's ineffectiveness, the petitioner has the burden of proof, since in Ohio a properly licensed attorney is presumably competent. *See Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164; *State v. Jackson*, 64 Ohio St.2d [107] at 110–111, 18 O.O.3d [348] at 351, 413 N.E.2d [819] at 822.

*State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999-Ohio-102, 714 N.E.2d 905. "The failure to prove either 1) a substantial violation or 2) prejudice caused by the violation makes it unnecessary for a court to consider the other prong of the test." *State v. Walker*, 3d Dist. Seneca No. 13-15-42, 2016-Ohio-3499, 66 N.E.3d 349, ¶ 20. "To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "The prejudice inquiry, thus, focuses not only on outcome determination, but also on 'whether the result of the proceeding was fundamentally unfair or unreliable.'" *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180 quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

{¶28} Here, X.S.'s argument is that trial counsel 1) failed to object to personal jurisdiction when he was not present at the adjudicatory hearing and had not been served; 2) failed to object to the stay of the proceedings; and 3) failed to object to the admission of an incomplete report. All of these issues have been addressed previously in this opinion. The first assignment of error challenged the establishment of personal jurisdiction and it was determined to have been waived. Now X.S. claims counsel was ineffective for waiving personal jurisdiction.

-20-

However, X.S. does not show how he would have been prejudiced if he had not waived it. At best, the disposition hearing would have been cancelled and the trial court would have ordered a new adjudication hearing and X.S. would have been served. X.S. provides no argument as to how the failure to object would have changed the outcome of an adjudication. The complaint alleged that X.S. called the police and reported that A.R. was holding him at gunpoint and the children were missing. A.R. reported to the police that she was at the hospital after having been drugged by X.S. A mandated reporter had indicated the children were not being fed. When officers made contact with X.S., he appeared to be under the influence. Further investigation showed that A.R. had lied about being at the hospital, but had a history of drug use. Domestic violence was also alleged to be occurring in the home. At the adjudication hearing, A.R. stipulated that both she and X.S. had engaged in domestic violence, were using illegal substances, and that the conditions of the home affected the health and safety of the children. X.S. did not deny that any of this was accurate at any time during the proceedings. Additionally, X.S. does not deny the accuracy of the allegations in his brief. Without a showing of prejudice, counsel cannot be found to have acted in an ineffective manner.

{¶29} Next, X.S. argues that counsel was ineffective for failing to object to the trial court's decision to stay the proceedings pending an appeal by a third party. This Court does not find that this was an error by counsel but instead could be a matter of trial strategy. At the time the stay was entered, the permanent custody

hearing had already begun. The evidence was showing that X.S. was still frequently testing positive on his drug screens and had not made adequate progress on the case plan. The second day of the hearing was scheduled for June 17, 2022. Doc. 183. The stay was *sua sponte* entered on May 13, 2022. That same day, X.S. appeared for his visit while under the influence of cocaine and his visits were subsequently suspended. A reasonable attorney might have determined that the stay provided his client additional time to correct the errors made at the May visit and to show the trial court that X.S. had changed his behavior for the positive. The stay provided X.S. additional time to comply with the case plan and possibly show substantial progress before the permanent custody hearing resumed. This would be a matter of trial strategy. "Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." *State v. Conley*, 2d Dist. Montgomery No. 26359, 2015-Ohio-2553, ¶ 5, 43 N.E.3d 775. Since this reasonably could have been a trial strategy, it cannot be the basis for a finding of ineffectiveness.

{¶30} Finally X.S. claims his counsel was ineffective for failing to object to the admission of a report which was not a full report because it did not contain the call logs showing who had made the calls. A review of the briefs shows that X.S. argues the call log would have shown that all the reports regarding X.S.'s home came from one neighbor. The Agency argues it would have shown that the calls

-22-

came from multiple sources. Both briefs ask us to presume what the items outside of the record would show. This Court cannot decide what an exhibit would or would not show when it is not in the record. The record before us shows that the exhibit was admitted without objection and that X.S. was able to testify regarding who had made the calls. The record does not show that counsel erred by not objecting. Thus counsel was not ineffective. The sixth assignment of error is overruled.

{¶31} Having found no error prejudicial to appellant in the particulars assigned and argued, the judgments of the Common Pleas Court of Logan County, Family Court Division are affirmed.

*Judgments Affirmed*

**WALDICK and ZIMMERMAN, J.J., concur.**

**/hls**