[Cite as *In re D.C.-F.*, 2024-Ohio-1237.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

IN RE:

    D.C.-F.,

ADJUDGED DEPENDENT CHILD.

[KERENZA C. - APPELLANT]

CASE NO. 1-23-34

**O P I N I O N**

Appeal from Allen County Common Pleas Court
Juvenile Division
Trial Court No. 2021 JG 37284

**Judgment Affirmed**

**Date of Decision:  April 1, 2024**

APPEARANCES:

    *Linda Gabriele* **for Appellant**

    *Ashley R. Stansbery* **for Appellee**

**ZIMMERMAN, J.**

{¶1} This is an appeal from the May 22, 2023 decision of the Allen County Court of Common Pleas, Juvenile Division, which terminated the parental rights of appellant, Kerenza C., mother of D.C.-F. ("Kerenza") and Michael F., father of D.C.-F. ("Michael") and granted permanent custody of their minor child to Allen County Children Services Board (the "agency"). For the reasons that follow, we affirm.

{¶2} D.C.-F., was born in 2016, to Kerenza and Michael, both unmarried at the time. On March 12, 2021, the agency filed a motion in the trial court for emergency-temporary custody of D.C.-F., which the trial court granted. On March 16 2021, the agency filed a complaint alleging D.C.-F. to be a neglected child under R.C. 2151.03(A)(1) and a dependent child under R.C. 2151.04(C).

{¶3} After a shelter-care hearing on March 15, 2021, the trial court concluded that probable cause existed to believe that D.C.-F. was a neglected and dependent child; that it was in his best interest to be placed in the temporary custody of the agency; and that

> reasonable efforts were made by the [agency] to prevent the placement and removal of [D.C.-F.] from the home prior to March 12, 2021, and thereafter to eliminate the continued removal of [D.C.-F.] from the home, and to make it possible for [him] to return and/or remain in the home.

(Doc. No. 11). Then, on March 17, 2021, trial court appointed D.C.-F. a Court Appointed Special Advocate/Guardian Ad Litem ("GAL").

{¶4} At the adjudicatory hearing on April 21, 2021, Kerenza admitted that D.C.-F. was a dependent child. (Doc. No. 23). Thereafter, the trial court found D.C.-F. to be a dependent child under R.C. 2151.04(C) and dismissed the neglect allegation in the complaint. (*Id.*). The trial court further made a reasonable-efforts finding in favor of the agency. (*Id.*).

{¶5} The GAL filed a report with the trial court on May 28, 2021 recommending D.C.-F. remain in the temporary custody of the agency and that he continue in his current foster placement.

{¶6} At the dispositional hearing on June 7, 2021, the parties agreed and the trial court ordered that D.C.-F. remain in the temporary custody of the agency and again the trial court made a reasonable-efforts finding in favor of the agency. (Doc. No. 30).

{¶7} On September 8, 2021, the trial court held a review hearing and continued D.C.-F.'s temporary-custody placement with the agency. Further, the trial court made a reasonable-efforts finding in favor of the agency. (Doc. No. 41).

{¶8} On April 27, 2022, the trial court granted the agency's motion for a six-month extension of temporary custody and determined that the agency had made

reasonable efforts to prevent the removal, eliminate the continued removal, and to make it possible for D.C.-F. to return home safely. (Doc. No. 64).

{¶9} Kerenza filed a motion seeking custody of D.C.-F. on July 25, 2022. Then, on August 8, 2022, the agency filed a motion for permanent custody. (Doc. No. 69). After conducting the permanent-custody hearing on May 15, 2023, the trial court granted permanent custody of D.C.-F. to the agency on May 22, 2023. (Doc. No. 102).

{¶10} Kerenza filed a notice of appeal and sets forth three assignments of error. We will address Kerenza's first and second assignments of error together followed by her third assignment of error.

### First Assignment of Error

**The Juvenile Court's Decision Is Against The Manifest Weight Of The Evidence As The Appellee Did Not Prove By Clear And Convincing Evidence That The Agency Should Be Granted Permanent Custody Of The Minor Child.**

### Second Assignment of Error

**The Juvenile Court Abused Its Discretion In Finding That The Permanent Custody To The Agency Was In The Minor Child's Best Interest.**

{¶11} In her first and second assignments of error, Kerenza argues that the trial court erred in granting permanent custody of D.C.-F. to the agency since it was against the manifest weight of the evidence and because the trial court failed to consider D.C.-F.'s wishes under R.C. 2151.414(D)(1)(b).

*Standard of Review*

**{¶12}** The right to raise one's child is a basic and essential right. *In re Murray*, 52 Ohio St.3d 155, 157 (1990), citing *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212 (1972) and *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626 (1923). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394 (1982). However, the rights and interests of a natural parent are not absolute. *In re Thomas*, 3d Dist. Hancock No. 5-03-08, 2003-Ohio-5885, ¶ 7. These rights may be terminated under appropriate circumstances and when the trial court has met all due process requirements. *In re Leveck*, 3d Dist. Hancock Nos. 5-02-52, 5-02-53, and 5-02-54, 2003-Ohio-1269, ¶ 6, citing *In re Palmer*, 12 Ohio St.3d 194, 196 (1984), *cert. denied*, 469 U.S. 1162, 105 S.Ct. 918 (1985).

**{¶13}** When considering a motion for permanent custody of a child, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. *See In re C.E.*, 3d Dist. Hancock Nos. 5-09-02 and 5-09-03, 2009-Ohio-6027, ¶ 14. R.C. 2151.414(B)(1) establishes a two-part test for courts to apply when determining whether to grant a motion for permanent custody. *In re S.G.*, 9th Dist. Wayne No. 15AP0005, 2015-Ohio-2306, ¶ 10. The trial court must find, by clear and convincing evidence that: (1) one of the circumstances in R.C. 2151.414(B)(1)(a)-

(e) applies, and (2) that permanent custody is in the best interest of the child. *Id.*

*See also In re Brown*, 98 Ohio App.3d 337, 342-343 (3d Dist.1994).

*Analysis*

R.C. 2151.414(B)(1) provides, in its pertinent parts, that

> \* \* \* the [trial] court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
>
> \* \* \*
>
> (d)   The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

R.C. 2151.414(B)(1)(d).

**{¶14}** If the trial court makes this statutorily required determination, a reviewing court will not reverse a trial court's decision unless it is not supported by clear and convincing evidence. *In re H.M.K.*, 3d Dist. Wyandot Nos. 16-12-15 and 16-12-16, 2013-Ohio-4317, ¶ 43, citing *In re Meyer*, 98 Ohio App.3d 189, 195 (3d Dist.1994), *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), and *In re Adoption of Lay*, 25 Ohio St.3d 41, 42 (1986).  "Clear and convincing evidence is

that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re S.G.*, 2015-Ohio-2306, at ¶ 10, citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Ledford* at 477, citing *Ford v. Osborn*, 45 Ohio St. 1 (1887), *Cole v. McClure*, 88 Ohio St. 1 (1913), and *Frate v. Rimenik*, 155 Ohio St. 11 (1926). If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280-281 (1978).

{¶15} Moreover, issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier-of-fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does *not* translate to the record well." (Emphasis sic.) *Davis v. Flickinger*, 77 Ohio St.3d 415, 419 (1997).

Furthermore,

'[w]eight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the [trier-of-fact] that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*."'

(Emphasis sic.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 12, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), *superseded by statute on other grounds, State v. Smith*, 80 Ohio St.3d 80 (1997), quoting Black's Law Dictionary 1594 (6th ed. 1990).

*Manifest Weight Analysis*

**{¶16}** When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court

'"weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."'

*Eastley* at ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001), quoting *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); accord *In re Pittman*, 9th Dist. Summit No. 20894, 2002-Ohio-2208, ¶ 23-24.

*R.C. 2151.414*

**{¶17}** Now, we turn to address Kerenza's first and second assignments of error. In this case, the trial court concluded that R.C. 2151.414(B)(1)(d) was applicable. (Doc. No. 102). The finding under R.C. 2151.414(B)(1)(d) is an alternative finding, and is "independently sufficient to use as a basis to grant the Agency's motion for permanent custody." *In re M.R.*, 3d Dist. Defiance No. 4-12-18, 2013-Ohio-1302, ¶ 80, citing *In re Langford Children*, 5th Dist. Stark No. 2004CA00349, 2005-Ohio-2304, ¶ 17. Under the plain language of R.C. 2151.414(B)(1)(d), when a child has been in an agency's temporary custody for 12 or more months of a consecutive 22-month period, a trial court need not find that the child cannot be placed with either parent within a reasonable time or should not be placed with the parents. *In re I.G.*, 3d Dist. Marion Nos. 9-13-43, 9-13-44, and 9-13-45, 2014-Ohio-1136, ¶ 30, citing R.C. 2151.414(B)(1)(d); *In re A.M.*, 3d Dist. Marion No. 9-14-46, 2015-Ohio-2740, ¶ 14.

**{¶18}** The record supports that D.C.-F. had been in the temporary custody of the agency continuously since his removal in 2021. The agency filed its permanent-custody motion on March 12, 2021 with the final hearing being heard on May 15, 2023. Hence, the record is clear that D.C.-F. was in the temporary custody of the agency from 2021 until 2023 in excess of 12 months in a consecutive 22-month period.

**{¶19}** Accordingly, based on the evidence presented and because it is dispositive, we conclude that the trial court's determination under R.C. 2151.141(B)(1)(d) is sufficient to satisfy the first prong of the permanent-custody test and is not against the manifest weight of the evidence.

*Best Interests*

**{¶20}** Thus, having satisfied the first prong of the permanent-custody test, we proceed to the second prong of the test–the trial court's consideration of the best-interest factors. R.C. 2151.414(D) contains the factors for a trial court to consider when determining whether granting permanent custody to an agency is in the best interests of a child. R.C. 2151.414(D)(1) reads as follows:

> [i]n determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in

the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1)(a)-(e).

{¶21} After reviewing the evidence in the record and determining the applicability of R.C. 2151.414(B)(1)(d), the trial court addressed the best-interest factors under R.C. 2151.414(D)(1)(a)-(e), ultimately, concluding by clear and convincing evidence that it was in the best interest of D.C.-F. that the agency be awarded permanent custody.

{¶22} Here, Kerenza argues that the trial court failed to consider R.C. 2151.414(D)(1)(b), since the GAL never asked D.C.-F. regarding his wishes. To address this assertion, we start our review of the record regarding the trial court's consideration of the R.C. 2151.414(D) factors.

{¶23} In its judgment entry, the trial court made findings relevant to the best-interest factors set forth in R.C. 2151.414(D). Addressing the factors in R.C. 2151.414(D)(1)(a), concerning the relationships of D.C.-F., the record suggests

evidence that D.C.-F. "has adjusted to his placement and appear[ed to be] happy and comfortable." (Doc. No. 102). This finding is supported by the testimony of the agency's caseworker and the GAL's written report and recommendation.

**{¶24}** Regarding R.C. 2151.414(D)(1)(b), concerning the wishes of the child as expressed directly or through the recommendation of the GAL considering D.C.-F.'s maturity, the GAL filed several reports with the trial court prior to the permanent-custody hearing noting that D.C.-F. was too young to express his wishes. Because of his young age and lack of maturity and considering her investigation, the GAL recommended that it was in D.C.-F.'s best interest for the trial court to grant permanent custody of him to the agency. *See In re L.T.*, 10th Dist. Franklin Nos. 23AP-26, 23AP-28, 23AP-67, and 23AP-68, 2023-Ohio-4329, ¶ 20; *In re M.A.*, 8th Dist. Cuyahoga No. 112411, 2023-Ohio-3251, ¶ 53.

**{¶25}** Next, the trial court discussed the factors in R.C. 2151.414(D)(1)(c) and R.C. 2151.414(D)(1)(d), which concerns D.C.-F.'s custodial history and his need for permanency. Specifically, the trial court found that D.C.-F. had been in the temporary custody of the agency for 25 consecutive months. This finding is reinforced by the same evidence supporting the trial court's R.C. 2151.414(B)(1)(d) determination noted in our disposition of the first assignment of error discussed above.

**{¶26}** Lastly, concerning factor R.C. 2151.414(D)(1)(e), the trial court found none of the factors under R.C. 2151.414(E)(7)-(11) applicable to Kerenza.

**{¶27}** Based on our review of the record, we find competent, credible evidence supports the trial court's determination that granting permanent custody to the agency was in D.C.-F.'s best interest. Accordingly, because the trial court's decision to grant permanent custody of D.C.-F. to the agency is not against the manifest weight of the evidence, we overrule Kerenza's first and second assignments of error.

### Third Assignment of Error

**The Juvenile Court Committed Prejudicial Error In Findings That The Allen County Children Services Board Made Reasonable Efforts For The Children To Return To The Custody Of Appellant-Mother.**

**{¶28}** In her third assignment of error, Kerenza argues that the trial court erred by granting permanent custody of D.C.-F. to the agency because the agency failed to make reasonable efforts toward reunification. Specifically, Kerenza contends that she was never permitted to graduate to unsupervised visitations despite achieving goals in the case plan.

*Standard of Review*

**{¶29}** The question of whether an Agency has made reasonable efforts towards reunification is reviewed under an abuse of discretion standard. *In re A.M.*, 2015-Ohio-2740, at ¶ 24. An abuse of discretion suggests the trial court's decision

is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

**{¶30}** "'Reasonable efforts' has been defined as the state's efforts, after intervening to protect a child's health or safety, to resolve the threat to the child before removing the child from the home or to return the child to the home after the threat is removed." *In re I.H.*, 6th Dist. Lucas No. L-20-1062, 2020-Ohio-4853, ¶ 23, citing In re Mar.H., 6th Dist. Lucas No. L-17-1171, 2018-Ohio-883, ¶ 51, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 28. Case plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated." *In re Evans*, 3d Dist. Allen No. 1-01-75, 2001-Ohio-2302, *3. "Agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan." *In re A.M.A.*, 3d Dist. Crawford No. 3-13-02, 2013-Ohio-3779, ¶ 29. Importantly, the Agency's case plan and efforts need only be reasonable and diligent under the circumstances of the case before the Agency. *Id.*

Indeed,

> [n]o one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, "whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." R.C. 2151.01(A). To that end, various sections of the Revised Code

refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit.

*In re C.F* at ¶ 29.  In particular, under R.C. 2151.419, when a trial court

removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency * * * has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.

R.C. 2151.419(A)(1).  The Supreme Court of Ohio has

determined that the trial court is not obligated, under R.C. 2151.419, to make a determination that the agency used reasonable efforts to reunify the family at the time of the permanent custody hearing *unless* the agency has not established that reasonable efforts have been made prior to the hearing.

(Emphasis sic.)  *In re N.R.S.*, 3d Dist. Crawford Nos. 3-17-07, 3-17-08, and 3-17-09, 2018-Ohio-125, ¶ 25, citing *In re C.F.* at ¶ 41, 43 (concluding that the reasonable-efforts determination under R.C. 2151.419 does not apply to permanent-custody motions under R.C. 2151.413 or to hearings on such motions under R.C. 2151.414).

**{¶31}** The Supreme Court of Ohio held that

the trial court is only obligated to make a determination that the agency has made reasonable efforts to reunify the family at "adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent children, all of which occur prior to a decision transferring permanent custody to the state."

*In re B.S.*, 3d Dist. Allen No. 1-15-44, 2015-Ohio-4805, ¶ 36, quoting *In re C.F.*, 2007-Ohio-1104, at ¶ 41, 43.

**{¶32}** Accordingly, since the trial court made its reasonable-efforts finding when it granted emergency custody to the agency by *ex parte* order at the time of the shelter-care, at adjudication, and ordered that D.C.-F. remain in the temporary custody of the agency at the dispositional hearings, the trial court was not required to make any further reasonable-efforts findings. (*See* Doc. Nos. 1, 11, 22, 30, 41, 64); *In re S.D.*, 9th Dist. Lorain Nos. 15CA010864 and 15CA010867, 2016-Ohio-1493, ¶ 25. Stated another way, because the trial court previously made the requisite R.C. 2151.419 "reasonable efforts" findings, it was not required to again make those findings at the hearing on the agency's motion for permanent custody filed under R.C. 2151.413. *See In re C.F.* at ¶ 43. Nevertheless, the trial court specifically determined in its permanent-custody entry that the agency "has made, and continues to make, reasonable efforts to finalize the permanency goal for [D.C.-F.]." (Doc. No. 102).

**{¶33}** Moreover, even though she argues that the agency never allowed her to graduate to unsupervised visitations, the testimony of the caseworker supports the trial court's finding that it was Kerenza who failed to maintain regular visits with D.C.-F. Specifically, she missed 78 out of 110 *supervised visitations* with D.C.-F. at the agency in the preceding 25 months asserting a variety of excuses. Ultimately,

the trial court found that Kerenza had not made D.C.-F. her top priority nor had she made efforts towards reunification.

{¶34} Accordingly, we conclude that Kerenza has not demonstrated that the trial court abused its discretion by determining that the agency made reasonable efforts toward reunification under the circumstances presented in this appeal. Therefore, her third assignment of error is overruled.

{¶35} Having found no error prejudicial to the appellants herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and ZMUDA, J.J., concur.**

**\*\* Judge Gene A. Zmuda of the Sixth District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**