[Cite as *In re A.M.A.*, 2013-Ohio-3779.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

IN THE MATTER OF:

    A.M.A.,                               CASE NO. 3-13-02

ADJUDGED DEPENDENT CHILD.

[HEATHER M. MARTIN –                O P I N I O N
    APPELLANT].

Appeal from Crawford County Common Pleas Court
Juvenile Division
Trial Court No. C2125114

**Judgment Affirmed**

**Date of Decision:  September 3, 2013**

APPEARANCES:

    *Brian N. Gernert* **for Appellant**

    *Michael J. Wiener* **for Appellee, Crawford County Dept. of
        Job & Family Services**

    *Geoffrey L. Stoll* **, Guardian Ad Litem**

**SHAW, J.**

{¶1} Mother-appellant, Heather M. Martin ("Heather"), appeals the December 13, 2012 judgment of the Crawford County Juvenile Court granting the "Motion to Award Legal Custody and Close Case" filed by the Guardian Ad-Litem ("GAL") assigned to the case. As a result of the trial court's ruling, Heather's parents (the "Martins") were awarded legal custody of Heather's child, A.M.A., and the child welfare case with the Crawford County Department of Job and Family Services (the "Agency") was closed.

{¶2} On June 18, 2012, Heather gave birth to A.M.A. On June 27, 2012, the Agency filed a Motion for Ex Parte Orders and Shelter Care Hearing, requesting the trial court grant the Agency emergency temporary custody of A.M.A. In support of the motion, the Agency attached a letter, dated June 27, 2012, that it received from A.M.A.'s Pediatrician, Dr. Howard Eckstein. In this letter, Dr. Eckstein explained that he had recently seen A.M.A. during an office visit and felt that she was "at a high risk for neglect." (Doc. No. 1). Dr. Eckstein specifically stated that A.M.A. had lost weight since her discharge from the hospital and when he asked Heather to bring the child back in two days to check her weight, she refused. Dr. Eckstein described in the letter Heather's erratic and irrational behavior during the office visit and on the phone after the visit. He also indicated in the letter that Heather had been diagnosed with Bipolar Disorder and

was not being treated. Dr. Eckstein closed the letter by expressing concern for A.M.A.'s "well-being, safety, and nutritional status." (Id.).

{¶3} The Agency also attached the affidavit of one of its caseworkers, Brandi Gandert, who stated that she had a telephone conversation with Dr. Eckstein on June 27, 2012, in which he articulated his concerns for A.M.A.'s well-being. In addition, the Agency filed a complaint alleging one-week-old A.M.A to be a neglected child pursuant to R.C. 2151.03(A)(2).

{¶4} The record also indicates that A.M.A.'s older sibling was removed from Heather's care and placed with the Martins due to concerns that Heather was unable to provide for the child's basic needs.

{¶5} The trial court granted the Agency emergency temporary custody of A.M.A. and appointed a GAL to the case.

{¶6} On June 28, 2012, a shelter care hearing was held. In its July 3, 2012 Judgment Entry, the trial court stated that "the Court was informed that all the parties present concurred and stipulated that probable cause does exist to believe that the child was in a neglected condition, and that removal from the mother's home was necessary and appropriate to protect the child from immediate harm from the condition of the surroundings, to provide adequate care for the child, and to protect the best interest and welfare of the child." (Doc. No. 14). The trial court

subsequently awarded the Agency temporary custody of A.M.A. and Heather was afforded reasonable visitation.

**{¶7}** On July 16, 2012, the trial court held an adjudication hearing where Heather admitted to the allegations of neglect contained in the complaint, stipulated that sufficient evidence existed for an adjudication of neglect, and consented to the adjudication of A.M.A. as a neglected child.

**{¶8}** On July 27, 2012, Heather, pro se, filed a "Motion for a More Definite Statement (Bill of Particulars)," claiming that she did not understand the allegations of neglect in the complaint and requesting "a more definite statement (bill of particulars) than what was offered in the complaint." (Doc. No. 19).

**{¶9}** On the same day, Heather's court-appointed counsel filed a motion to withdraw from her representation, claiming that Heather has been filing her own pleadings without consulting him and asserting that a "total breakdown in communication and cooperation has occurred between undersigned counsel and Heather M. Martin deteriorating the attorney-client relationship." (Doc. No. 20). The trial court subsequently appointed different counsel to represent Heather.

**{¶10}** On August 7, 2012, the Agency filed a motion requesting the trial court grant legal custody of A.M.A. to her maternal grandparents, Todd and Cheryl Martin (the "Martins") as a dispositional order. The record indicates that

the Agency filed this motion because Heather was unwilling to cooperate with the Agency's attempt to obtain a psychological evaluation of her.

{¶11} In a judgment entry dated August 15, 2012, the trial court addressed the concerns presented by Heather in her pro se motion. Specifically, the trial court stated that Heather's newly appointed "legal counsel had sufficient knowledge of the particulars of the evidence supporting the allegations of the Complaint so that he was able to successfully negotiate an amendment from neglect to dependency. It is the determination of the court that a 'more definite statement' after the conclusion of the adjudication would be redundant and surplusage and serves no useful purpose." (Doc. No. 25).

{¶12} On August 15, 2012, the trial court held a dispositional hearing and journalized its findings from the hearing in its August 17, 2012 Judgment Entry. In this judgment entry, the court indicated that at the hearing the Agency orally withdrew its motion for legal custody based upon Heather's representations that she intended to cooperate with the completion of a parenting evaluation and a psychological evaluation, and sign all appropriate releases for information relating to the evaluations. The trial court still determined that it would not be in A.M.A.'s best interest to return her to Heather, and instead ordered the Martins to have temporary custody of A.M.A. with the Agency having protective supervision. The trial court specified that its orders were to be in effect until June 17, 2013 unless

extended or modified. Heather was given reasonable supervised visitation with A.M.A. which could be increased or decreased by the Agency depending upon Heather's progress with the case plan. The trial court specifically ordered Heather to complete a parenting evaluation and a psychological evaluation and to sign all necessary releases.

{¶13} The record indicates that Heather signed the case plan on September 5, 2012, which the trial court subsequently approved. The case plan identified the primary concern with Heather was that she had been diagnosed with Schizoaffective Disorder and Bi-Polar Disorder and was not receiving treatment.

{¶14} The case plan listed several objectives for Heather to meet, which also addressed the Agency's concern with Heather's mental health. In particular, Heather was expected to cooperate with and complete a full psychological evaluation which included a parental component. Heather was expected to follow all the recommendations from the evaluation. Heather was also expected to take medications as prescribed and to notify the Agency of any newly prescribed medications or changes in her medication. Finally, Heather was expected to sign all necessary releases pertaining to case plan goals. The case plan also specified that Heather's progress would be measured in the following ways: announced and unannounced visits; her cooperation with the Agency; obtaining the completed

assessment and following all recommendations; and reports from the Agency working with Heather.

{¶15} On September 6, 2012, Heather, in compliance with the case plan, submitted to a psychological and parental evaluation conducted by Dr. David Tennenbaum.

{¶16} On September 12, 2012, the GAL filed a "Motion to Award Legal Custody and Close Case." As the basis for his motion the GAL highlighted several of Dr. Tennenbaum's findings in his psychological assessment of Heather, in which Dr. Tennenbaum ultimately concluded that due to her troubled psychiatric history, including multiple psychotic episodes, and her unwillingness to be accountable for her diagnosed psychiatric disorders, "Heather cannot be viewed as capable of protecting any small child[.]" (Tennebaum Report at 8). The GAL argued in his motion that, based on Dr. Tennenbaum's assessment, Heather "has virtually no chance of making any type of meaningful recovery within the time parameters set forth by statute for the [Agency] to effectuate reunification." (Doc. No. 35). Accordingly, the GAL requested the trial court award legal custody of A.M.A. to the Martins.

{¶17} On October 22, 2012, the trial court held a hearing where the Agency indicated that it was unable to find local service providers to meet the treatment recommendations enumerated in Dr. Tennenbaum's report. The trial court granted

a continuance to allow Heather's counsel more time to attempt to find appropriate local services to meet those treatment recommendations.

{¶18} On November 26, 2012, the Agency received notice that Heather's releases for treatment information had been revoked.

{¶19} On December 5, 2012, the trial court held a hearing on the GAL's motion to modify the disposition in the case. The GAL presented the testimony of Brandy Gandert, the Agency's caseworker assigned to the case.

{¶20} Brandy testified to Heather's lack of cooperation with the Agency and other social service providers. Specifically, Brandy explained that Heather had revoked releases for her medical information that she previously signed in compliance with the case plan. Brandy explained that since Heather revoked the releases the Agency cannot assess her progress with meeting the objectives in the case plan. Brandy also testified that she attempted to conduct an unannounced home visit of Heather's residence, which is a component of the case plan. However, Heather would not allow Brandy into the home without her attorney present. Brandy explained that this complicated the Agency's typical protocol in conducting home visits, because both announced and unannounced visits are intended to give the Agency a more accurate assessment of the home conditions.

{¶21} Brandy also testified that A.M.A. was doing very well in the Martins' home. Brandy acknowledged that Heather regularly and consistently

exercised her visitation with A.M.A. However, Brandy testified that she believed that without Heather's cooperation there was nothing more the Agency could do for Heather in helping her progress with the case plan. Accordingly, Brandy recommended closing the Agency's case and stated that it is in A.M.A.'s best interest to grant legal custody to the Martins. Brandy explained that Heather could still have visitation with A.M.A. but she would need to arrange that with the Martins and the Agency would no longer have any oversight.

{¶22} In addition to Brandy's testimony, the GAL admitted Dr. Tennenbaum's psychological evaluation of Heather as an exhibit.

{¶23} At the conclusion of the hearing, the trial court determined that the evidence supported a finding that Heather's lack of cooperation had obstructed the Agency's ability to facilitate her reunification with A.M.A. The trial court further stated that "until such time as there would be meaningful cooperation, the court must find that there [are] no further useful or beneficial services [that can be provided by the Agency], and, therefore, the Court does find that the motion is well taken[.]" (Tr. at 27-28). The trial court subsequently ordered the disposition to be modified from temporary custody to legal custody of A.M.A. to the Martins "until such time as either parent can demonstrate to the Court that they are able to

resume the responsibilities and duties of parenting this child such that a modification of the Order would be appropriate."[1]  (JE, Dec. 5, 2011 at 2-3).

**{¶24}** Heather now appeals, asserting the following assignment of error.

**THE TRIAL COURT ERRED IN DETERMINING CRAWFORD COUNTY JOB AND FAMILY SERVICES MADE REASONABLE EFFORTS TO ELIMINATE THE CONTINUED REMOVAL OF THE CHILD FROM THE CHILD'S HOME AND TO MAKE IT POSSIBLE FOR THE CHILD TO RETURN SAFELY HOME AS REQUIRED BY OHIO REVISED CODE SECTION 2151.419(A)(1)**

**{¶25}** In her sole assignment of error, Heather claims that the trial court erred in determining that the Agency made reasonable efforts to prevent the continued removal of A.M.A. from her home pursuant to R.C. 2151.419.

**{¶26}** At the outset, we note that an award of legal custody does not permanently deprive Heather of her parental rights, and parents whose children are in the legal custody of an agency or other person may petition the court for modification of the custody award.  *In re M.D.* 10th Dist. Franklin No. 07AP–954, 2008–Ohio–4259, ¶ 16.  *See also* R.C. 2151.353(E)(2).  The juvenile court may award legal custody of a child to a non-parent where a preponderance of the evidence supports the conclusion that such an award is in the best interest of the child.  *In re N.F.*, 10th Dist. Franklin No. 08AP–1038, 2009–Ohio–2986, ¶ 9.  This contrasts with an award of permanent custody, which must be supported by

---

[1] We note that, during the course of the proceedings, A.M.A.'s father was identified and legally determined to be her biological father.  However, he did not actively participate in the trial court proceedings, despite being properly served with notice.

clear and convincing evidence. *Id.* (stating that an award of "legal custody where parental rights are not terminated is not as drastic a remedy as permanent custody."). Further, "preponderance of the evidence" means evidence that is more probable, more persuasive, or of greater probative value. *Id.*

**{¶27}** Determining an appropriate disposition is left to the sound discretion of the court. *In re M.D.*, 2008–Ohio–4259 at ¶ 21. The court "must also consider which situation will best promote the care, protection, and mental and physical development of the child with the understanding that the court should separate a child from his family environment only when necessary for the child's welfare or in the interest of public safety." *In re T.P.*, 12th Dist. Clinton No. CA2012–02–004, 2012–Ohio–4614, ¶ 7, citing R.C. 2151.01(A).

**{¶28}** Accordingly, this Court may not reverse a juvenile court's choice of dispositional alternatives in the absence of a finding that the court abused its discretion, i.e., acted unreasonably, arbitrarily or unconscionably. *In re M.D.* at ¶ 22. We reverse its choice of disposition only where a juvenile court's decision regarding a child's best interest is not supported by competent, credible evidence and is unreasonable.

**{¶29}** As previously discussed, the Revised Code imposes a duty on the part of children services agencies to make reasonable efforts to reunite parents with their children where the agency has removed the children from the home.

R.C. 2151.419; *see*, *also*, *In re Brown*, 98 Ohio App.3d 337, 344 (3d Dist. 1994). Further, the agency bears the burden of showing that it made reasonable efforts. R.C. 2151.419(A)(1). "Case plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated." *In re Evans*, 3d Dist. Allen No. 1–01–75, 2001–Ohio– 2302. To that end, case plans establish individualized concerns and goals, along with the steps that the parties and the agency can take to achieve reunification. *Id*. Agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan. *Id*. "Nevertheless, the issue is not whether there was anything more that [the agency] could have done, but whether the [agency's] case planning and efforts were reasonable and diligent under the circumstances of this case." *In re Leveck*, 3d Dist. Hancock Nos. 5–02–52, 5–02–53, 5–02–54, 2003–Ohio–1269, ¶ 10. We also note that the statute provides that in determining whether reasonable efforts were made, the child's health and safety is paramount. *See* R.C. 2151.419(A)(1)

{¶30} In this case, the record demonstrates that Heather has a significant history of ongoing and chronic mental illness, which has often been left untreated due to her refusal to admit that she suffers from a mental illness. The record suggests that Heather's struggle with mental illness has in the past interfered with her ability to parent, which resulted in A.M.A.'s older sibling being removed from

Heather's care and placed with the Martins. The record also reflects that there is a real concern that Heather is unable to provide for the basic needs of a small child. Specifically, based on his assessment of Heather, Dr. Tennenbaum concluded the following regarding her current ability to raise a young child.

> **Further, diagnostically, as has been noted historically, Heather's paranoid thinking will further compromise interpersonal relationships, particularly as this interfaces with the ability to safely and effectively raise any children. * * * While Heather works to present herself effectively, concerns are multi-layered as case planning considers reunification. She not only discounts, but seems to ignore her own history; she projects blame and takes no accountability, at least from what she shares with me, in having contributed to concerns that have been documented since mid-childhood. At times that she has been frankly psychotic, as has been documented repeatedly, Heather cannot be viewed as capable of protecting any small child, her history of behavioral acting-out, and lashing-out further compromising prognosis. Her condition appears chronically problematic. The effort must be toward providing parenting classes, and supportive but insight-seeking counseling, as this interfaces with psychiatric follow-up.**

(GAL Ex. A at 7-8).

{¶31} Thus, given Heather's extensive and ongoing psychological history, the Agency's ability to monitor Heather's progress with her psychiatric treatment is critical. The record demonstrates that Heather has obstructed the Agency's ability to monitor her progress by revoking the releases to allow the Agency to obtain information from her service providers and refusing to participate in unannounced home visits. Both of these are case plan objectives that were put in

place by the Agency to allow Heather the opportunity to demonstrate that she is capable of providing for A.M.A.'s basic needs and that her mental health issues no longer pose a danger to A.M.A.'s well-being. It is apparent from the record that the Agency is limited in what it can do to assist Heather in working towards reunification with A.M.A. without her cooperation. However, as previously discussed, due to the impermanent nature of the legal custody disposition, Heather is not foreclosed from petitioning the court for a modification of the custody award. Moreover, if Heather chooses to take the appropriate steps to demonstrate that she is capable of providing for A.M.A's basic needs she will increase the chances that her petition is successful.

{¶32} We also note that the record supports the trial court's finding that it is in A.M.A.'s best interest to grant legal custody to the Martins until Heather chooses to take steps to demonstrate that she is capable of parenting A.M.A. Testimony at the motion hearing indicates that the Martins have provided a safe and stable home in which A.M.A. is thriving.

{¶33} Based on the foregoing, we find that the Agency's case planning and efforts were reasonable and diligent under the circumstances of this case. We also find that there is competent, credible evidence in the record to support the trial court's determination that modification of the disposition from temporary custody

to legal custody of A.M.A. to the Martins is in A.M.A.'s best interest.  Therefore, we find no error with the trial court's ruling.

{¶34} The assignment of error is overruled and the judgment of the Crawford County Juvenile Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**