[Cite as *In re M.M.*, 2024-Ohio-5756.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

IN RE:

    M.M.,

ADJUDICATED DEPENDENT CHILD.

[NIKIA G. - APPELLANT]

CASE NO. 1-23-78

O P I N I O N

IN RE:

    B.B.,

ADJUDICATED DEPENDENT CHILD.

[NIKIA G. - APPELLANT]

CASE NO. 1-23-79

O P I N I O N

IN RE:

    T.B.,

ADJUDICATED DEPENDENT CHILD.

[NIKIA G. - APPELLANT]

CASE NO. 1-23-81

O P I N I O N

IN RE:

    Z.B.,

ADJUDICATED DEPENDENT CHILD.

[NIKIA G. - APPELLANT]

CASE NO. 1-23-82

O P I N I O N

**Appeals from Allen County Common Pleas Court
Juvenile Division
Trial Court Nos. 2021 JG 37751, 2021 JG 37750,
2021 JG 37748 and 2021 JG 37749**

**Judgments Affirmed**

**Date of Decision:  December 9, 2024**

---

**APPEARANCES:**

   *Howard A. Elliott* **for Appellant**

   *Lauren E. Mangold* **and** *Ashley Stansbery* **for Appellee**

**ZIMMERMAN, J.**

   **{¶1}** Mother-appellant, Nikia G. ("Nikia"), appeals the November 8, 2023 judgments of the Allen County Court of Common Pleas, Juvenile Division, granting permanent custody of her minor children, T.B., Z.B., B.B., and M.M., to the Allen County Children Services Board (the "agency").  For the reasons that follow, we affirm.

   **{¶2}** T.B., Z.B., B.B., and M.M. are the children of Nikia.  The father of T.B., Z.B., and B.B. is Benny B. ("Benny").  Even though Benny was notified of the proceedings and requested court-appointed counsel, he had no further involvement in the cases.  The father of M.M. is Harold M. ("Harold").  Harold was very involved

in the cases until his death on December 16, 2022. Thus, the only appellant in these cases is Nikia.

{¶3} These cases began in October of 2021 when the agency was considering Nikia as a potential placement option for her nephews in a case involving Nikia's sister. As part of the investigation process, the agency conducted a drug screen and Nikia tested positive for cocaine, fentanyl, and tramadol. Nikia's husband (the children's stepfather) also tested positive for the same illegal substances. Upon further investigation, the agency learned of ongoing domestic violence between Nikia and the children's stepfather. The agency also discovered that Nikia's 15-year-old son, T.B., was not enrolled in school.

{¶4} On November 24, 2021, a shelter-care hearing was held and the trial court determined that it was in the children's best interest that they be removed from Nikia's home. The trial court ordered that all four children be placed in the temporary custody of M.M.'s father, Harold. At the time of its order, the trial court found that the agency made reasonable efforts to prevent the removal of the children from their home. Specifically, the trial court found that the agency provided case management and investigation services, out-of-home safety planning services, drug screens, and other referral services.

{¶5} Following the hearing on November 24, 2021, the agency filed complaints alleging T.B., Z.B., B.B., and M.M. to be dependent children under R.C. 2151.04(C).

-3-

**{¶6}** An adjudication hearing was held on February 15, 2022. By agreement of the parties, T.B., Z.B., B.B., and M.M. were found to be dependent children under R.C. 2151.04(C). As to reasonable efforts made by the agency, the trial court found that the agency made reasonable efforts to eliminate the continued removal of the children from Nikia's home.

**{¶7}** A dispositional hearing was held on February 22, 2022. As the temporary custodian for all four children, Harold's failing health was addressed at the hearing. By agreement of the parties, the trial court ordered that M.M. be placed in the temporary custody of Harold's adult daughter, being M.M.'s half-sister. The trial court further ordered that T.B., Z.B., and B.B. be placed in the temporary custody of the agency. As to reasonable efforts by the agency, the trial court found that

> reasonable efforts were made by the Allen County Children Services Board to prevent removal of the minor child[ren] from the home prior to removal and to eliminate continued removal of the minor child[ren] from the home prior to placement and that reasonable efforts have been made to make it possible for said minor child[ren] to return home.

(Case No. 2021 JG 37748, Doc. No. 41); (Case No. 2021 JG 37749, Doc. No. 41) (Case No. 2021 JG 37750, Doc. No. 41) (Case No. 2021 JG 37751, Doc. No. 40). The trial court further found that the agency made "reasonable efforts to finalize a permanency plan that is in the best interest of the minor child[ren] herein." (*Id.*).

{¶8} Following the hearing on February 22, 2022, the agency placed T.B., Z.B., and B.B. in a foster home in Findlay, Ohio. M.M. went to live with her half-sister.

{¶9} On November 16, 2022, the trial court issued an ex parte emergency custody order regarding M.M. because the half-sister refused to continue to serve as temporary custodian. A shelter-care hearing was held the following day and, by agreement of the parties, M.M. was placed in the shelter care of the agency. Thereafter, M.M. was placed in the same foster home as T.B., Z.B., and B.B. in Findlay. All four children remained in this foster home throughout the remainder of the proceedings.

{¶10} A review hearing was held on December 8, 2022. Following the hearing, the trial court transferred temporary custody of M.M. from the half-sister to the agency. In addition, the trial court continued the agency's temporary custody of T.B., Z.B., and B.B. As to reasonable efforts made by the agency, the trial court found that the agency continued to provide services to make it possible for the children to return to Nikia's home. In particular, the trial court found that the agency provided case management and investigation services, general counseling, out-of-home placement, safety plan services, drug and alcohol screening, and other referral services.

{¶11} On April 24, 2023, the agency filed motions for permanent custody of T.B., Z.B., B.B., and M.M. After a permanent-custody hearing on October 25 and

26, 2023, the trial court granted permanent custody of T.B., Z.B., B.B., and M.M. to the agency on November 8, 2023. As to reasonable efforts of the agency, the trial court found that "the Agency has made, and continues to make, reasonable efforts to finalize the permanency goal for the Minor Child[ren] herein." (Case No. 2021 JG 37748, Doc. No. 121); (Case No. 2021 JG 37749, Doc. No. 120) (Case No. 2021 JG 37750, Doc. No. 113) (Case No. 2021 JG 37751, Doc. No. 133).

{¶12} Nikia filed her notices of appeal on December 7, 2023. She raises a single assignment of error for our review.

**Assignment of Error**

**The Appellant/Mother was prejudiced by the Agency's failure to use reasonable efforts to reunite the mother with her children, requiring the permanency order to be vacated.**

{¶13} In her sole assignment of error, Nikia argues that the trial court erred by granting permanent custody of T.B., Z.B., B.B., and M.M. to the agency because the agency failed to make reasonable efforts toward reunification. Specifically, Nikia contends that the agency failed to do enough to help her overcome her substance abuse issues.

*Standard of Review*

{¶14} "We review under an abuse-of-discretion standard a trial court's finding that an agency made reasonable efforts toward reunification." *In re A.M.*, 2015-Ohio-2740, ¶ 24 (3d Dist.). An abuse of discretion suggests the trial court's

decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Analysis*

**{¶15}** The concept of "reasonable efforts" has been defined as "the state's efforts, after intervening to protect a child's health or safety, to resolve the threat to the child before removing the child from the home or to return the child to the home after the threat is removed." *In re I.H.*, 2020-Ohio-4853, ¶ 23 (6th Dist.), citing *In re C.F.*, 2007-Ohio-1104, ¶ 28. However,

> [n]o one section of the Revised Code addresses the concept of reasonable efforts. Overall, Ohio's child-welfare laws are designed to care for and protect children, "whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety." To that end, various sections of the Revised Code refer to the agency's duty to make reasonable efforts to preserve or reunify the family unit.

*In re C.F.* at ¶ 29, quoting R.C. 2151.01(A). In particular, under R.C. 2151.419, when a trial court

> removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency . . . has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home.

R.C. 2151.419(A)(1). *See In re T.S.*, 2015-Ohio-1184, ¶ 27 (3d Dist.) (noting that the child's welfare is paramount when making a reasonable-efforts determination under R.C. 2151.419(A)(1)).

{¶16} In these cases, the trial court made a reasonable-efforts determination under R.C. 2151.419(A)(1) following the removal of the children from their home due, in significant part, to Nikia's substance abuse issues. Specifically, the trial court concluded that the agency made reasonable efforts to avoid removal through case management and investigation services, out-of-home safety planning services, drug screens, and other referral services.

{¶17} Thereafter, a disposition hearing was held on February 22, 2022. At the hearing, an agency caseworker testified that a case plan had been developed to address Nikia's substance abuse issues. The case plan provided that Nikia would submit to random drug screens, complete an alcohol and drug assessment, complete parenting classes, and provide a safe and suitable home for the children. The trial court determined that the agency made reasonable efforts to prevent the continued removal of the children from their home and to make it possible for the children to return home.

{¶18} The trial court made another reasonable-efforts determination following a review hearing held on December 8, 2022. The evidence presented at the review hearing showed that, even though Nikia had tested negative for illegal substances for several weeks, she recently tested positive for THC. The evidence further showed that Nikia engaged in inappropriate communications with the children causing the agency to have concerns about Nikia's mental health. Thus, the case plan was modified to include a psychological evaluation and agency-

supervised visitation with the children. The trial court determined that the agency continued to make reasonable efforts toward reunification of the family.

{¶19} On appeal, Nikia argues that the trial court abused its discretion by determining that the agency made reasonable efforts toward reunification. In particular, Nikia argues that the agency failed to make reasonable efforts because she "was left to her own devi[c]es" to overcome her substance abuse issues. (Appellant's Brief at 14). Nikia asserts that the agency's efforts were lacking because, even though the case plan included substance abuse treatment and referrals, "it was expected that [she] would take care of all those things." (*Id.*).

{¶20} "Case plans are the tool that child protective service agencies use to facilitate the reunification of families who . . . have been temporarily separated." *In re Evans*, 2001 WL 1333979, *3 (3d Dist. Oct. 30, 2001). "[C]ase plans establish individualized concerns and goals, along with the steps that the parties and the agency can take to achieve reunification." *In re T.S.*, 2015-Ohio-1184, at ¶ 27 (3d Dist.). "Agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan." *In re A.M.A.*, 2013-Ohio-3779, ¶ 29 (3d Dist.). Importantly, the agency's case planning and efforts need only be reasonable and diligent under the circumstances of the case. *In re A.M.A.* at ¶ 29.

> "'Reasonable efforts' does not mean all available efforts. Otherwise, there would always be an argument that one more additional service, no matter how remote, may have made reunification possible."

*In re H.M.K.*, 2013-Ohio-4317, ¶ 95 (3d Dist.), quoting *In re M.A.P.*, 2013-Ohio-655, ¶ 47 (12th Dist.).

**{¶21}** The record reveals that the children were removed from their home due, in significant part, to Nikia's substance abuse issues. The agency developed a case plan to address the reasons for the removal and to facilitate reunification of the family. As set forth in the case plan, Nikia was to submit to random drug screens as requested by the agency and to test negative for illegal substances. The case plan further provided that Nikia was to complete an alcohol and drug assessment and follow all recommendations, complete a mental health assessment and follow all recommendations, complete parenting classes and be able to verbalize and demonstrate learned skills, maintain safe and suitable housing for the children, and meet with the caseworker at least once a month in the home where she is living. Nikia did not successfully complete the case plan. Critically, Nikia failed to overcome her substance abuse issues.

**{¶22}** Here, the record shows that Nikia submitted to 35 drug screens over the course of the proceedings. The trial court found that she tested positive for illegal substances in 26 of those screens. Perhaps the most-telling evidence of Nikia's ongoing struggle with substance abuse is that she tested positive for amphetamines, methamphetamines, and cocaine just one month prior to the permanent-custody hearing. Importantly, at the hearing, Nikia testified that she "used a line of cocaine" because she "was going through a lot." (Oct. 26, 2023 Tr.

at 42). Nikia further testified that she bought the cocaine "off the street" and that she tested positive for methamphetamine because "[y]ou never know what they put into things anymore." (*Id.* at 53).

**{¶23}** The record further reveals that, even though Nikia completed an alcohol and drug assessment, she did not follow through with the recommendations. Nikia did not complete substance abuse counseling or treatment. She also failed to maintain contact with the agency for several months. During this period of time, the agency was not able to make monthly home visits, nor was it able to administer drug screens. Nikia failed to submit to random drug screens in April, May, June, and July of 2023. She tested positive for illegal substances in March, August, and September of 2023.

**{¶24}** As previously stated, when considering the agency's reasonable efforts, the issue is not whether there is anything more the agency could have done, but whether the case planning and efforts were reasonable and diligent under the circumstances. *See In re A.M.A.*, 2013-Ohio-3779, at ¶ 29 (3d Dist.); *In re H.M.K.*, 2013-Ohio-4317, at ¶ 95 (3d Dist.). Here, the record reflects that the agency's case planning and efforts were reasonable and diligent under the circumstances. Even though Nikia blames the agency for her failure to overcome her substance abuse issues, the record supports the trial court's conclusion that Nikia's history of drug abuse and her inability to maintain her sobriety, her lack of mental health treatment,

-11-

her inappropriate actions and conversations with the children, and her ability to keep herself safe and free from abusive relationships led to the failed reunification.

**{¶25}** Accordingly, based on the record before us, we conclude that the trial court did not abuse it discretion by determining that the agency engaged in reasonable efforts toward reunification.

**{¶26}** Nikia's sole assignment of error is overruled.

**{¶27}** Additionally, we note that there is a pending motion to dismiss filed on November 8, 2024, wherein the agency requests that the matter involving T.B. be dismissed due to T.B. attaining the age of majority in December of 2023. Based on this court's decision as stated herein, the motion to dismiss should be denied as being moot.

**{¶28}** Having found no error prejudicial in the particulars assigned and argued, we affirm the judgments of the trial court.

*Judgments Affirmed*

**WILLAMOWSKI, P.J. and MILLER, J., concur.**

**/hls**