[Cite as *In re A.S.*, 2025-Ohio-70.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

IN RE:

    A.S.,

ADJUDICATED DEPENDENT
AND ABUSED CHILD.

[EUGENE S. - APPELLANT]

CASE NO. 1-24-08

O P I N I O N

---

IN RE:

    Eu.S.,

ADJUDICATED DEPENDENT CHILD.

[EUGENE S. - APPELLANT]

CASE NO. 1-24-09

O P I N I O N

---

IN RE:

    El.S.,

ADJUDICATED DEPENDENT CHILD.

[EUGENE S. - APPELLANT]

CASE NO. 1-24-10

O P I N I O N

---

IN RE:

    H.S.,

ADJUDICATED DEPENDENT CHILD.

[EUGENE S. - APPELLANT]

CASE NO. 1-24-11

O P I N I O N

Case No. 1-24-08, 09, 10, 11

**Appeals from Allen County Common Pleas Court**
**Juvenile Division**
**Trial Court Nos. 2023 JG 38622, 2022 JG 37883,**
**2022 JG 37890 and 2022 JG 37891**

**Judgments Affirmed**

**Date of Decision:  January 13, 2025**

**APPEARANCES:**

*Alison Boggs* **for Appellant**

*Ashley Stansbery* **for Appellee**

**WILLAMOWSKI, J.**

{¶1} Father-appellant Eugene S. ("Father") brings this appeal from the judgments of the Court of Common Pleas of Allen County, Juvenile Division granting permanent custody of the children to the Allen County Children Services Board ("the Agency").[1]  On appeal Father challenges the trial court's judgment as being against the manifest weight of the evidence and claims the Agency failed to use reasonable case planning and diligent efforts to reunify Father with his children. For the reasons set forth below, the judgments are affirmed.

---

[1] As Mother has not filed an appeal, we will not address the aspects of the case that solely apply to her.

*Background*

**{¶2}** Father and Hilary L. ("Mother") are the biological parents of four children: H.S. (born 2015), El.S. (born 2019), Eu.S. (born 2021), and A.S. (born 2023). This case began after Eu.S. was born at 26 weeks gestation and required transportation for care at Nationwide Children's Hospital in Columbus, Ohio. Mother was last in contact with the hospital on December 20 or 21, 2021. Father last visited Eu.S. on December 28, 2021. On January 25, 2022, the hospital contacted the Agency after being unable to make contact with either parent for almost a month. The Agency was able to make contact with the parents and arrange for Mother to visit with Eu.S. However, neither Father nor Mother were cooperative with the Agency. During the investigation, concerns arose about drug use by Mother and issues with domestic violence involving Father.

**{¶3}** On February 18, 2022, the Agency filed a complaint alleging that the children were dependent and requesting temporary custody of them. An adjudicatory hearing was held on April 18, 2022, and the children were found to be dependent. The trial court held a hearing on disposition on May 3, 2022, and continued the temporary custody.

**{¶4}** The Agency filed a case plan that required Father to 1) complete random drug screens, 2) attend all necessary medical appointments of the children, 3) complete a mental health assessment and follow the recommendations, 4) complete a domestic violence program, 5) maintain safe and stable housing, 6) complete a

parenting class, 7) maintain employment, and 8) allow the Agency access to the home. Father was granted weekly visits of one hour with the children. On January 5, 2023, Father filed for unsupervised visitation with the children. The trial court then conducted an annual review of the case and considered Father's motion for unsupervised visits. The review noted that although Mother was sporadic in her visits, Father regularly visited. The review indicated that Father had completed the parenting class and the mental health assessment, but needed more time to complete the domestic violence program. The only issue the Agency noted with Father was that the Agency had not been able to conduct a home visit to Father's new residence at that time. However later when the visits were allowed, the trial court noted that Father's home was clean and appropriate at the January 2023 visit completed by the Agency. The trial court noted that Coleman Professional Services recommended that Father complete Moral Recognition Therapy classes, but Father had not yet done so. The trial court overruled Father's motion for unsupervised visits with the children.

{¶5} A.S. was born prematurely to Mother and Father in January of 2023 and tested positive for cocaine at that time. Mother also tested positive at the time of A.S.'s birth. The child was born at 30 weeks gestation and needed to be transferred to Riverside Methodist Hospital in Columbus, Ohio immediately following birth. Eventually A.S. was transferred to a Children's Hospital where he remained in the NICU for multiple months. While the child remained in the hospital, neither Mother

nor Father visited, though Father did call the hospital for updates. On April 5, 2023, the Agency filed a complaint alleging that A.S. was a dependent and an abused child. The trial court subsequently found A.S. to be a dependent and abused child and placed him in the temporary custody of the Agency. Eventually A.S. was placed in the same foster home as his siblings.

{¶6} On May 12, 2023, Father again filed for unsupervised visits. On September 14, 2023, the Agency filed motions for permanent custody of all of the children. The basis for the motions was that each child could not be placed with Father within a reasonable amount of time. The GAL filed her reports on November 15, 2023. The GAL noted that she had not been able to contact Mother despite numerous requests for contact throughout the case. The GAL had visited Father's home as well as that of the foster parents. The GAL reported that the foster home was appropriate for the children and the children appeared bonded to the foster parents, with El.S. and H.S. referring to the foster mother as "mom". The GAL noted that Father had completed his MRT counseling, but had been diagnosed with schizoaffective disorder with paranoia. Father was refusing further counseling. According to the GAL, both H.S. and El.S. expressed a desire to live with Father, however they both also stated they would be happy remaining with the foster family as well. Eu.S. and A.S. were too young to express an opinion. In her conclusion, the GAL made the following recommendation:

[Father] has consistently stated that he desired for the children to come to him if [Mother] was unable to do so. The children are well bonded with [Father] and benefit from communication with their father. [Father], however, has not been able to progress in visitation despite requests and no hearing to proceed on. [Father] has completed all case plan services except counseling. There were no recommendations for psych to my knowledge. [Father] has also been inappropriate at visits at times to my knowledge as recent as May of 2023. [Father] admits to a recent screen by the agency having cocaine however denies use. Unfortunately, [Eu.S., H.S., and El.S.'s] cases are nearing the two-year mark in February 2024 and the children deserve permanency. The foster parents are interested in adoption of all four children, and it is unclear if continued communication will be possible between the children and the father. Father's home is adequate for his children, but he lacks proper beds for the children currently. I believe it would be in the best interest of these children that permanent custody be granted to the agency. I am hopeful that the foster parents will continue to involve the father in visits with the children so long as it remains appropriate and in the best interest of the children. I believe this case is close and I believe that if father were afforded additional [time] that he may be able to reach reunification with the children, but the timeline of the case does not allow this and [Father] is not presently in a position for the children to be returned to him due to a recent drug screen (needing an AOD assessment and following recommendations) and little progress on counseling (he just went back to Coleman for an assessment to engage in counseling) and not progressed to any sort of unsupervised time where the children have visited at the home of the father with little to no time for the children to become well-adjusted.

GAL report.

{¶7} A hearing on the permanent custody motions and Father's motion for unsupervised visits was held on November 30, 2023. At the hearing, the Agency presented the testimony of the caseworker, Erika Long ("Long"). No other witnesses were presented by any party. Following the hearing, the trial court entered judgment granting permanent custody to the Agency. The trial court specifically

-6-

noted that Father had not been able to exercise unsupervised visits with the children due to his mental health issues and his substance abuse issues. The trial court referred to Father's consistent use of marijuana and alcohol as well as the one drug screen where he tested positive for cocaine. The trial court also found that Father had only attended one of the children's numerous medical appointments. As to transportation, the trial court found that Father had not made use of viable forms of transportation, instead relying solely on his bicycle, which would not be sufficient for transporting four children. Due to the children being placed with a family member in Columbus, Father failed to visit with the children from May 2023 through August of 2023 for over a period of 90 days despite the Agency offering him vouchers to take the bus to visit. The trial court granted the motion finding that Father 1) had failed to remedy the situation causing the removal of the children from the home in spite of reasonable and diligent efforts by the agency, 2) had abandoned the children by not having any contact with them for more than 90 days, and 3) has untreated mental health issues that put the children at risk if returned to him. Next, the trial court considered that best interest factors and found that it would be in the children's best interests to terminate Father's parental rights. Father appeals from these judgments and raises the following assignments of error on appeal.

**First Assignment of Error**

**The trial court's decision granting permanent custody was against the manifest weight of the evidence.**

## Second Assignment of Error

**The Agency failed to use reasonable case planning and diligent efforts to reunify [Father] with his children in violation of his constitutional right to raise his children.**

*Manifest Weight of the Evidence*

{¶8} Father's first assignment of error alleges that the trial court's decision is against the manifest weight of the evidence. The right to parent one's own child is a basic and essential civil right. *In re Murray*, 52 Ohio St.3d 155 (1990). "Parents have a 'fundamental liberty interest' in the care, custody, and management of their children." *In re Leveck*, 2003–Ohio–1269, ¶ 6 (3d Dist.). These rights may be terminated, however, under appropriate circumstances and when all due process safeguards have been followed. *Id.* When considering a motion to terminate parental rights, the trial court must comply with the statutory requirements set forth in R.C. 2151.414. These requirements include, in pertinent part, as follows:

> (B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
>
> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the

temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

. . .

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section . . . the court shall consider all relevant factors, including, but not limited to, the following.

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies . . . for twelve or more months of a consecutive twenty-two month period . . . .

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414. "A court's decision to terminate parental rights will not be overturned as against the manifest weight of the evidence if the record contains competent, credible evidence by which a court can determine by clear and

convincing evidence that the essential statutory elements for a termination of parental rights have been established." *In re Da.R.*, 2019-Ohio-2270, ¶ 9 (3d Dist.). The standard of review for a determination of legal custody is an abuse of discretion standard. *In re C.S.*, 2022-Ohio-2451 (3d Dist.).

{¶9} The determination whether to grant a motion for permanent custody requires a two-step approach. *In re L.W.*, 2017-Ohio-4352 (3d Dist.). The first step is to determine whether any of the factors set forth in R.C. 2151.414(B)(1) apply. *Id.* If one of those circumstances applies, then the trial court must consider whether granting the motion is in the best interest of the child by considering the factors set forth in R.C. 2151.414(D). *Id.*

{¶10} Pursuant to the statute, when determining whether a child could or should be placed with either parent within a reasonable time, the trial court must consider all relevant evidence. R.C. 2151.414(E). The statute lists multiple factors and indicates that if the trial court finds by clear and convincing evidence that one of them applies, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." R.C. 2151.414(E). These factors include the following relevant ones:

> (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the

court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(2) Chronic mental illness, chronic emotional illness, intellectual disability, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;

. . .

(10) The parent has abandoned the child.

. . .

(16) Any other factor the court considers relevant.

R.C. 2151.414(E).

**{¶11}** Here, the trial court found that the children could not be placed with Father within a reasonable time. Specifically, the trial court found that Father had not remedied the conditions that caused the removal of the children from the home despite the efforts of the Agency, that Father suffered from mental health issues, and that Father had abandoned the children. We will look at each of these factors individually.

**{¶12}** At the trial, Long testified that the children were removed from the home because the parents were not seeing to the medical needs of Eu.S. When Eu.S. was in the hospital, Father did not visit with her regularly and when it was time for

-11-

her to be released, the hospital was unable to contact either parent. While investigating, the Agency learned of Mother's drug usage and domestic violence issues between Mother and Father. As a result, the Agency set eight goals for Father to complete. The first was to submit to random drug screens. Long testified that Father completed multiple drug screens and tested positive for marijuana in every one of them. Long also testified that in September of 2023, Father tested positive for cocaine as well as marijuana. Additionally, Father regularly consumed alcohol which interfered with his willingness to complete the case plan.

{¶13} Next, the Agency wanted Father to attend all necessary medical appointments of the children. Both Eu.S. and A.S. were born prematurely and had multiple medical appointments with many of them being in Columbus. Father was able to attend one of the medical appointments. Father does not have a driver's license and uses his bicycle for transportation. The one appointment he attended, Father arrived by bicycle. The Agency offered Father bus passes or gas money for him to reimburse someone for driving him, but Father refused. Father refused the bus passes because he does not believe in the transportation system.

{¶14} The third requirement was that Father complete a mental health assessment and follow the recommendations. Long testified that Father completed the assessment in June of 2022. The assessment diagnosed him with schizoaffective disorder with paranoia, alcohol abuse disorder, and cocaine abuse disorder. The recommendations were that Father engage in psychiatric and counseling services.

A review of the Diagnostic Assessment indicated that Father was smoking "2-3 blunts" of marijuana daily and drinking a six-pack of beer. Ex. 7. When questioned about his health and medication, he indicated that he did not go to doctors because he did not "believe in the system". Ex. 7. Father reported having paranoid thoughts almost daily. "Reports [as] paranoid. He reports he was a kid the last time he saw spirits. Reads vibrations and energy. He has a lot of racing thoughts. Telepathy". Ex. 7. The counselor noted in the diagnostic assessment that Father was "preoccupied with racism" as he attributed everything bad that has happened in his life to racism. Ex. 7. The assessor noted that Father as not agreeable to the recommendation for psychiatric care. The records from Coleman Heath show that Father has an extensive history of mental health issues with counseling starting back in 2016. Long also testified that Father has made paranoid statements to her about how many people are "out to get him." An example was when the children were placed with a relative in Columbus. Father, who is African-American, told Long that he did not want his children living with white people. When Long told Father that the relative was African-American, Father stated that no, she was not any longer because the Agency had "sent a virus to her head". Tr. 37.

{¶15} Father was required to complete a domestic violence assessment and follow the recommendations. This was required due to multiple instances of domestic violence between Father and Mother, with Father having prior convictions for domestic violence and the last incident occurring in November 2022. Father

also indicated to the therapist at Coleman that he believed he had the right to strike a woman who disrespected him. Father did complete the assessment and it was recommended that he complete MRT classes and counseling. Father did not complete the program because claimed to have previously completed it, so did not need to do it again. Father did eventually complete a Batterers' Intervention Program.

{¶16} The fifth requirement was for Father to maintain safe and stable housing. This requirement was met by Father. Long testified that Father had been in a suitable home for approximately a year. According to Long, if stable housing was the only consideration, the children could be returned.

{¶17} Completion of a parenting class was the sixth requirement. Long testified that Father did complete the parenting class and showed that he could parent during the visits. The visits generally went well with the children happy to see Father and Father providing food, interacting with the children, and changing diapers when needed.

{¶18} Next, Father was required to maintain employment and show proof of income. Long testified that Father was known to go from job to job. Father claimed that his employers and coworkers were out to get him, so he would either leave or be fired. The last job Long knew Father had was at a local restaurant, but she had seen no income verification from him.

-14-

**{¶19}** Finally, the Agency required Father to grant monthly access to his home. Father did not comply with this requirement. Long testified that for a significant portion of 2022 she did not know where Father was living as she did not have a good address for him. In the fall of 2022, Father obtained his current home. For a while Father was cooperative and would allow Long to come to the home. Then in July 2023, Father decided she was not welcome in the home. Father met her at one visit and yelled at her that he was not going to work the case plan anymore and told her to get off his property. Father informed Long that the Agency had taken "what was his and he was taking it back". Tr. 32. Father then went into the home and slammed the door. Due to the implied threat, the Agency instituted a safety waiver that exempted Long from going to the home due to Father's irrational and threatening behavior. Father later admitted at the August meeting that he was under the influence of alcohol at the time of the July interaction.

**{¶20}** When asked to summarize Father's compliance with the case plan, Long indicated that Father had substantially complied with the case plan. However, Long did not feel that the children should be returned to Father due to his untreated mental health issues. Long testified that Father's mental health issues were too severe and that was the critical area where Father had not completed the case plan. Although Father loves his children, Long did not think he could appropriately parent them with his mental health issues.

**{¶21}** The trial court found that Father had not remedied the conditions which caused the children to be removed from the home because of his untreated mental health conditions. The trial court noted that Father was resistant to treatment. Although Father had attempted to reengage with services the week before the permanent custody hearing, he was still resistant to the treatment. Additionally, Father continued to abuse substances and had a long history of violence. Father had not fully completed the MRT counseling which was recommended because he had previously completed it when he was convicted of domestic violence. Despite having completed the counseling previously, he continued to engage in violent behavior, particularly with women. All of these findings are supported by the testimony and exhibits at the hearing. As such this Court does not find that the trial court erred in finding the factors set forth in R.C. 2151.414(E)(1) and (16) applicable.[2] Although the trial court also found that Father had abandoned the children as a factor pursuant to R.C. 2151.414(E)(10), this court need not address it as other factors were supported by the record. Since at least one of the factors applies, the trial court was next required to find that the children could not or should not be placed with Father within a reasonable time.

**{¶22}** Once one of the factors is met under R.C. 2151.414(B), the trial court must then consider the best interest of the children. R.C. 2151.414(D). The trial

---

[2] Based upon the evidence before it, the trial court could also have found that there was an issue with Father's chronic mental illness pursuant to R.C. 2151.414(E)(2).

court considered each of the factors. The trial court specifically made findings of fact regarding the statutory factors and those factors were supported by the record. When considering the interactions of the children as required by R.C. 2151.414(D)(1)(a), the trial court noted that the children were bonded with each other and the foster family. There is no doubt that Father and the children are also bonded as both the testimony of Long and the GAL's report indicate there is a bond. However, the children were happy with the foster family and also enjoy spending time in that home.

{¶23} R.C. 2151.414(D)(1)(b) requires the trial court to consider the wishes of the children. The GAL noted in her report that although H.S. and El.S. indicated they wanted to live with Father, they also indicated that they wanted to remain with the foster family. The GAL's report stated that the other children were too young to express their desires. The report indicated that although the children are happy to see Father and have a good relationship with him, the best interest of the children would be served by terminating Father's parental rights and allowing them to remain with the foster family. Long also testified that the children were happy in the foster home.

{¶24} R.C. 2151.414(D)(1)(c) addresses the custodial history of the children. The three oldest children had been in the temporary custody of the Agency since February 25, 2022, approximately 21 months. A.S. had been in the temporary custody of the Agency since April 2023, and had never resided with his parents.

{¶25} R.C. 2151.414(D)(1)(d-e) addresses the children's needs for legally secure placement and any other factors. Long testified that all of the children were in need of a legally secure permanent placement and they were all thriving in their current placement. Eu.S. and A.S. were getting the medical attention they needed, H.S. was doing well in school, and El.S. was doing well in pre-school. The trial court found the children needed a legally secure placement and noted that Father presented safety concerns for the children due to his mental health issues. The trial court also noted that father had gone long periods of time without visiting with the children because he was not willing to accept help from the system to make the visits possible due to his paranoid tendencies.

{¶26} A review of the record indicates that the trial court fully considered the statutory factors when making the best interest determination. The findings the trial court made were supported by the testimony of Long, the GAL report, and the various exhibits. Credible evidence was presented to support, by clear and convincing evidence, the trial court's decision to terminate Father's parental rights. Thus, the judgment of the trial court is not against the manifest weight of the evidence. The first assignment of error is overruled.

*Reasonable Efforts*

{¶27} Father claims in the second assignment of error that the Agency did not use reasonable case planning and diligent efforts to reunify Father and the children. The Agency has the burden of showing that it made reasonable efforts to

reunify Father with the children. R.C. 2151.419. "Case plans are the tools that child protective service agencies use to facilitate the reunification of families who * * * have been temporarily separated." *In re Evans*, 2001–Ohio–2302, *3 (3d Dist.). "Agencies have an affirmative duty to diligently pursue efforts to achieve the goals in the case plan." *In re A.M.A.*, 2013-Ohio-3779, ¶ 29 (3d Dist.). However, this does not mean that there was nothing more that the Agency could have done, but rather that the Agency's case plan and efforts were reasonable and diligent under the circumstances of the case before the Agency. *Id.* The question of whether an Agency has made reasonable efforts towards reunification is reviewed under an abuse of discretion standard. *In re A.M.*, 2015-Ohio-2740, ¶ 24 (3d Dist.). "An abuse of discretion means an unreasonable, arbitrary, or unconscionable action." *State ex rel. Cincinnati Enquirer v. Sage*, 2015-Ohio-974, ¶ 35. A trial court's decision will not be disturbed on appeal if the record "contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established." *In re T.S.*, 2017-Ohio-482, ¶ 6 (2d Dist.).

{¶28} A review of the record in this case shows that the trial court had repeatedly made findings that the Agency was making reasonable efforts to prevent removal from the home. Throughout the journal entry, the trial court notes the efforts made by the Agency and the services and assistance offered to Father. Specifically the trial court noted that Father was offered counseling services and

-19-

psychiatric services through Coleman, bus vouchers or gas reimbursement to allow Father to attend medical appointments for the children and to visit the children when they were in Columbus, yet Father refused to fully utilize the assistance offered. The Agency attempted to complete home visits, but Father was not cooperative in that he either did not give them a correct address or told the caseworker to leave his property. The trial court noted that when the Agency would suggest programs, Father would refuse indicating that he did not believe "in the system". The case plan reviews, which were part of the record and the testimony of Long provide competent, credible evidence supporting the trial court's findings of reasonable efforts by clear and convincing evidence. The second assignment of error is overruled.

### Conclusion

{¶29} Having found no error prejudicial to appellant in the particulars assigned and argued, the judgments of the Common Pleas Court of Allen County, Juvenile Division are affirmed.

**Judgments Affirmed**

**ZIMMERMAN and MILLER, J.J., concur.**

**/hls**